WEAVER ET AL., APPELLEES, *v.* EDWIN SHAW HOSPITAL ET AL., APPELLANTS.

[Cite as *Weaver v. Edwin Shaw Hosp.*,
104 Ohio St.3d 390, 2004-Ohio-6549.]

(Nos. 2003–1055 and 2003–1145—Submitted March
31, 2004—Decided December 15, 2004.)

O'DONNELL, J.

{¶ 1} The central issue presented to us on this appeal concerns whether the disabilities of minority or unsound mind as referred to in R.C. 2305.16 can be removed only by attaining the age of majority or being declared of sound mind, or, in addition, whether they can also be removed by the appointment of a legal guardian. For the following reasons, we conclude that the appointment of a legal guardian for a person within the age of minority or of unsound mind does not remove the disabilities referred to in R.C. 2305.16 and, therefore, does not commence the running of the statute of limitations.

{¶ 2} On December 29, 1997, Morgan Weaver ("Morgan") then age 17, was struck by a car while riding his bicycle and suffered a traumatic brain injury, necessitating his constant care. Two subsequent incidents are the subjects of complaints involved in this case: on May 7, 1998, while a patient at Edwin Shaw Hospital, he allegedly fell out of a wheelchair, resulting in injuries to his head and face, and on June 29, 1998, while a patient at HealthSouth of Erie Rehabilitation Hospital, he again allegedly fell out of another wheelchair, resulting in injuries to his head and teeth.

{¶ 3} Following these incidents, on January 4, 1999, the Tuscarawas County Probate Court adjudicated him incompetent and appointed his parents, Edward and Deborah Weaver ("the Weavers"), as his legal guardians. On March 10,

2000, his parents filed medical-negligence claims against both Edwin Shaw Hospital and HealthSouth ("the hospitals") for the injuries sustained in the separate wheelchair incidents.

{¶ 4} The hospitals moved for summary judgment, arguing that the one-year statute of limitations had expired on both claims. The Weavers objected, arguing inter alia that R.C. 2305.16 tolled the running of the statute of limitations for a person of "unsound mind." The hospitals acknowledged the applicability of R.C. 2305.16 but asserted that Morgan's disability had been removed by the appointment of his parents as his guardians—more than a year before the filing of the lawsuit.

{¶ 5} The trial court granted summary judgment in favor of the hospitals and held that the appointment of his parents as his legal guardians triggered the running of the statute of limitations. On appeal, the court of appeals reversed in a cogent and well-reasoned opinion and held, for a variety of reasons, that the appointment of a guardian does not commence the running of the statute of limitations. It then certified its judgment as being in conflict with the Sixth District Court of Appeals' judgment in *McManus v. Belcher* (Jan. 13, 1995), Lucas App. No. L–94–032, 1995 WL 12145, reversed in part on other grounds (1995), 73 Ohio St.3d 106, 652 N.E.2d 684.

{¶ 6} We accepted the case for discretionary review (case No. 2003–1055), determined that a conflict exists (case No. 2003–1145), and consolidated these matters for review; we are called upon to consider whether the appointment of a guardian for an individual who is of unsound mind removes that disability as referred to in the saving statute.

{¶ 7} R.C. 2305.16 provides:

{¶ 8} "Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed."

{¶ 9} The parties here agree on three matters: (1) the tolling provision of R.C. 2305.16 applies in this case, (2) Morgan was of unsound mind at the time his causes of action accrued, and (3) Morgan is still of unsound mind. The dispute concerns whether the word "disability," as it is used in R.C. 2305.16, refers to Morgan's condition or his capacity to commence a legal action.

{¶ 10} The Weavers urge that "disability" refers to the status of the person entitled to bring an action. Therefore, they argue, because R.C. 2305.16 tolls the

statute until "the disability is removed," Morgan's claims are not subject to the statute of limitations until he becomes of sound mind.

{¶ 11} The hospitals, on the other hand, argue that "disability" refers to the person's lack of capacity to commence a legal proceeding; accordingly, they argue that the appointment of a legal guardian removed Morgan's "disability" and commenced the running of the statute of limitations.

## I. Statutory Construction

{¶ 12} "In the construction of statutes the purpose in every instance is to ascertain and give effect to the legislative intent, and it is well settled that none of the language employed therein should be disregarded, and that all of the terms used should be given their usual and ordinary meaning and signification except where the lawmaking body has indicated that the language is not so used." *Carter v. Youngstown Div. of Water* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63, paragraph one of the syllabus.

{¶ 13} Further, this court "must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370, paragraph five of the syllabus.

{¶ 14} We must also keep in mind the general rule regarding statutes of limitation: "in the absence of a saving clause, the statute runs against all persons, whether under disability, or not." *Powell v. Koehler* (1894), 52 Ohio St. 103, 118, 39 N.E. 195. And, "exceptions in statutes of limitations in favor of persons under disability should be strictly construed, and never extended beyond their plain import." Id.

{¶ 15} The plain import of R.C. 2305.16 tolls the running of the statute of limitations while the claimant is "within the age of minority or of unsound mind" at the time the cause of action accrues. The tolling ends, however, when the disability is removed. The statute contains no other exceptions.

{¶ 16} Further, only two descriptions of the term "disability" are referred to in the statute—the claimant's being "within the age of minority or of unsound mind." Notably, the statute provides that such claimants may bring an action within the respective times of the applicable statutes of limitation after "the disability is removed," not after appointment of a legal guardian. Had the General Assembly intended to include such a provision, it could have done so.

This court is not inclined to alter the language of an unambiguous statute. *Wachendorf*, 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370, paragraph five of the syllabus. Further, see *O'Brien v. Massachusetts Bay Transp. Auth.* (1989), 405 Mass. 439, 443, 541 N.E.2d 334, in which the court interpreted a similar tolling statute and concluded "that the appointment of a guardian has no effect on the protections afforded by the disability tolling statute. Our conclusion is based primarily on the fact that the statute does not mention the effect of a guardian's appointment".

{¶ 17} In our interpretation of this statute, we give the term "disability" its "common, ordinary and accepted meaning in the connection in which [it is] used," *Wachendorf*, and in so doing, we have concluded that the term "disability," as used in R.C. 2305.16, refers only to the two descriptions contained in that statute—being within the age of minority or of unsound mind.

{¶ 18} The second paragraph of R.C. 2305.16 also supports our conclusion that a "disability is removed" only when the person reaches the age of majority or becomes of sound mind:

{¶ 19} "After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, *the time during which the person is of unsound mind* and so adjudicated or so confined *shall not be computed* as any part of the period within which the action must be brought." (Emphasis added.)

{¶ 20} Importantly, this paragraph provides that the tolling continues during the time the claimant remains "of unsound mind" but, notably, does not mention the appointment of a guardian. As the court of appeals observed, the maxim "expressio unius est exclusio alterius" also prevents our addition of an additional statutory exclusion not expressly incorporated into this statute by the legislature.

## II. Relevant Case Authority

### A. Ward Owns the Cause of Action

{¶ 21} The hospitals argue that even if "disability" as used in R.C. 2305.16 refers to incompetency, the statute of limitations should begin to run upon the appointment of a legal guardian because, at that point, legal redress becomes available to the claimant.

{¶ 22} This argument is unpersuasive because the cause of action belongs to the ward, not to the guardian; hence, the tolling provided by R.C. 2305.16 applies as long as the ward suffers from the disability.

{¶ 23} Several other jurisdictions have considered and rejected similar arguments. In *McCarthy v. Volkswagen of Am., Inc.,* the New York Court of Appeals stated, "[T]he Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights *because of an over-all inability to function in society.*" (Emphasis added.) (1982), 55 N.Y.2d 543, 548, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (refusing to extend the meaning of "insanity" in the state's tolling statute to include persons with posttraumatic neurosis). The Nebraska Supreme Court reached a similar conclusion: "Insanity within [Neb. Rev.Stat.] § 25-213 [Nebraska's tolling statute] results in an incapacity which disqualifies one from acting for the protection of one's rights." *Sacchi v. Blodig* (1983), 215 Neb. 817, 822, 341 N.W.2d 326.

{¶ 24} Further, the Supreme Court of Washington held that its statute "tolls the statute of limitations for a legally incompetent person notwithstanding the appointment of a guardian. This is so because the right to the tolling statute vests in the incompetent person not in the guardian. From this premise, it follows that the guardian's subsequent actions on the incompetent person's behalf should have no additional effect upon the statute of limitations unless they result in res judicata." *Young v. Key Pharmaceuticals, Inc.* (1989), 112 Wash.2d 216, 223, 770 P.2d 182. The court also concluded that the phrase "a person entitled to bring an action," contained in its statute, referred to the claimant and not to the guardian. Id., 112 Wash.2d 216, 222, 770 P.2d 182. See, also, *Pardy v. United States* (S.D.Ill.1982), 548 F.Supp. 682, 684 (noting that Illinois courts have held that the appointment of a guardian does not affect the tolling provision with regard to a minor because "the minor is the true owner of the action").

{¶ 25} We agree with this reasoning and conclude that the term "disability" as used in R.C. 2305.16 does not refer to the legal inability to commence suit; rather, it refers only to the two descriptions of minority and unsound mind contained therein. This is because there is no language in this statute from which we could conclude that the legislature intended that a cause of action would accrue when a legal guardian discovered the ward's injury and its cause.

## B. Ohio Authority

{¶ 26} The hospitals also cite *McManus v. Belcher,* Lucas App. No. L–94–032, 1995 WL 12145, the conflict case certified to us by the Fifth District Court of Appeals, in which McManus, as guardian for a brain-damaged ward, Charles Smith, filed claims against Smith's alleged tortfeasors. The trial court granted summary judgment for the tortfeasors, holding that the claims had been filed subsequent to the expiration of the applicable statute of limitations. The appellate court in that case agreed, holding that the appointment of a guardian on May 16, 1990, had triggered the running of the statute of limitations and that, therefore, the claims, which had been filed on April 20, 1993, were barred by the

statute of limitations. The court ruled that "the statute of limitations for personal injury is not tolled for an incompetent individual once a guardian has been appointed."

{¶ 27} *McManus* is the only Ohio case that has reached this conclusion. Although *McManus* cites *Maylin v. Cleveland Psychiatric Inst.* (1988), 52 Ohio App.3d 106, 557 N.E.2d 170, to support its decision, the court in *Maylin* expressly "decline[d] to decide whether R.C. 2305.16 would apply to a guardian of the estate bringing a cause of action on behalf of his ward, or whether R.C. 2305.16 would apply to a guardian of the person bringing a cause of action on the ward's behalf with the approval of the probate court." *Maylin,* 52 Ohio App.3d at 109, 557 N.E.2d 170. In fact, the Tenth District acknowledged that the ward in that case could "bring this cause of action * * * herself when she is restored to competency." Id.

## C. Other States

{¶ 28} We recognize that some courts have interpreted saving statutes as holding that the appointment of a guardian triggers the running of the statute of limitations. The hospitals claim in their brief that seven jurisdictions have so determined. For example, in *First–Citizens Bank & Trust Co. v. Willis* (1962), 257 N.C. 59, 63, 125 S.E.2d 359, the court concluded that, although "the personal disability of insanity remained with the widow * * * when the guardian was appointed for her on 9 December, 1953, the disability to dissent [from her late husband's will] was removed." And, therefore, "the statute began to run against her right to dissent from that date and she is now barred. To hold otherwise would frequently preclude the settlement of estates during the lifetime of an insane spouse." Id.

{¶ 29} Similarly, in *Zator v. State Farm Mut. Auto. Ins. Co.* (1988), 69 Haw. 594, 752 P.2d 1073, the Hawaii Supreme Court decided that the appointment of a guardian commenced the running of the statute of limitations because the guardian could prosecute the incompetent's claims.

{¶ 30} The overwhelming majority of courts, however, that have interpreted statutes similar to Ohio's have concluded that the appointment of a guardian has no effect on the tolling of the statute of limitations. See, e.g., *Mason v. Ford Motor Co.* (C.A.8, 1985), 755 F.2d 120 (assuming that Missouri would apply the general rule that the appointment of a guardian has no effect on tolling); *Wayne Cty. Regional Educational Serv. Agency v. Pappas* (E.D.Mich.1999), 56 F.Supp.2d 807, 815 ("Under Michigan law, it is well-settled that an individual with a mental disability is the beneficiary of the tolling statute even where his rights have been capably handled by a guardian or an attorney"); *Desert State Life Mgt. Services v. Assn. of Retarded Citizens of Albuquerque* (D.N.M.1996), 939 F.Supp. 835; *Smith v. Reno* (D.Nev.1984), 580 F.Supp. 591; *Henry v. New York*

(1999), 94 N.Y.2d 275, 702 N.Y.S.2d 580, 724 N.E.2d 372 (explaining that New York's CPLR, Section 208, which tolls a statute of limitations during period when person is "under a disability because of infancy," is not terminated by acts of guardian or legal representative in taking steps to pursue claims on infant's behalf); *Emerson v. S. Ry. Co.* (Ala.1981), 404 So.2d 576, 579 (the appointment of a guardian for a mentally incompetent or nonage person does not have the effect of commencing the running of the period of limitations tolled by virtue of the disability); *Mason v. Sorrell* (1976), 260 Ark. 27, 551 S.W.2d 184; *First State Bank v. Catron* (1937), 268 Ky. 513, 105 S.W.2d 162; *Keating v. Michigan Cent. RR. Co.* (1892), 94 Mich. 219, 221, 53 N.W. 1053 ("the disability mentioned in the statute can have no other meaning than the infancy of the party, and it is not removed until the full period of his nonage shall elapse"); *Kiley v. Jennings, Strouss & Salmon* (Ariz.App.1996), 187 Ariz. 136, 927 P.2d 796 (the appointment of a conservator will not cease the tolling of the statute of limitations for those of unsound mind); *Gottesman v. Simon* (1959), 169 Cal.App.2d 494, 337 P.2d 906.

## III.

{¶ 31} Whether or not the appointment of a guardian for those within the age of minority or of unsound mind in Ohio *should* commence the running of a statute of limitations is a policy consideration best left to the Ohio General Assembly. Other state legislatures have so provided.

{¶ 32} In Colorado, for example, disability is defined as follows:

{¶ 33} "As used in [Article 81: Limitations—Persons under Disability], unless the context otherwise requires:

{¶ 34} "* * *

{¶ 35} "(3) 'Person under disability' means any person who is a minor under eighteen years of age, a mental incompetent, or a person under other legal disability *and who does not have a legal guardian.*" (Emphasis added.) Colo. Rev.Stat. 13–81–101.

{¶ 36} The Colorado law then expressly provides for the statute of limitations to run after a guardian is appointed:

{¶ 37} "If such person under disability is represented by a legal representative at the time the right accrues, or if a legal representative is appointed for such person under disability at any time after the right accrues and prior to the termination of such disability, the applicable statute of limitations shall run against such person under disability in the same manner, for the same period, and with the same effect as it runs against persons not under disability." Colo.Rev.Stat. 13–81–103(1)(a).

{¶ 38} And New York has imposed a time limit on filing claims regardless of disability:

{¶ 39} "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under the disability dies, the time within which the action must be commenced shall be extended to three years after the disability ceases or the person under the disability dies, whichever event first occurs; if the time otherwise limited is less than three years, the time shall be extended by the period of disability. *The time within which the action must be commenced shall not be extended by this provision beyond ten years after the cause of action accrues, except, in any action other than for medical, dental or podiatric malpractice, where the person was under a disability due to infancy.*" (Emphasis added.) CPLR Section 208.

{¶ 40} Further, the Mississippi saving statute is also limited:

{¶ 41} "If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons *under disability of unsoundness of mind* shall never extend longer than twenty-one (21) years." (Emphasis added.) Miss.Code Ann. Section 15–1–59.

{¶ 42} New Jersey's saving clause provides:

{¶ 43} "If any person entitled to any of the actions or proceedings specified in N.J.S.2A:14–1 to 2A:14–8 or N.J.S.2A:14–16 to 2A:14–20 or to a right or title of entry under N.J.S.2A:14–6 is or shall be, at the time of any such cause of action or right or title accruing, under the age of 21 years, or insane, such person may commence such action or make such entry, within such time as limited by those statutes, *after his coming to or being of full age or of sane mind.*" (Emphasis added.) N.J.Stat.Ann. Section 2A:14–21.

{¶ 44} We recognize that Ohio's General Assembly has placed an additional limit on filing claims for malpractice. Pursuant to R.C. 2305.113(C)(1), no medical-malpractice action may be commenced "more than four years after the occurrence of the act or omission constituting the alleged basis" of the claim. Notably, this provision does not apply "to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code." As other state legislatures have done, Ohio's General Assembly could have provided that a disability is removed upon the appointment of a guardian, but to date it has not chosen to do so.

{¶ 45} In the absence of such a statutory direction, we conclude that the term "disability" as used in R.C. 2305.16 refers only to the two descriptions contained in that statute—being within the age of minority or being of unsound mind. The

appointment of a guardian for a person within the age of minority or for a person of unsound mind neither removes the disability referred to in R.C. 2305.16 nor commences the running of the statute of limitations. In this case, the parties agree that Morgan is still of unsound mind; hence, his disability has not been removed. Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

O'CONNOR, J., concurs in judgment only.

———————

Burns, White & Hickton, L.L.C., and Michael G. Gallaway, for appellant HealthSouth of Erie Rehabilitation Hospital.

Buckingham, Doolittle & Burroughs, L.L.P., Ronald M. Wilt and Timothy A. Spirko, for appellant Edwin Shaw Hospital.

Hardin & Schaffner, L.P.A., David K. Schaffner and John P. Maxwell, for appellees.