[Cite as *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484.]

THE STATE EX REL. CARNA, APPELLANT, *v.* TEAYS VALLEY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE.

[Cite as *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.,* 131 Ohio St.3d 478, 2012-Ohio-1484.]

*Public schools—Nonrenewal of administrators' contracts—R.C. 3319.02(D)— Timing of administrator's request for meeting with school board to discuss reasons for nonrenewal.*

(No. 2011-0716—Submitted December 7, 2011—Decided April 4, 2012.)

APPEAL from the Court of Appeals for Pickaway County,

No. 10CA18, 2011-Ohio-1522.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we address the rights conferred on school administrators by the General Assembly through R.C. 3319.02(D), which governs the renewal and nonrenewal of school administrators' contracts. We hold that after an administrator has been informed that her contract will not be renewed, upon the administrator's request for a meeting with the school board to discuss the nonrenewal of her contract, R.C. 3319.02(D)(4) requires the board to meet in executive session with the administrator to discuss the reasons for nonrenewal. In light of our holding, we reverse the judgment of the court of appeals and remand to the trial court for further proceedings consistent with this opinion.

RELEVANT BACKGROUND

*Factual History*

{¶ 2} In June 2006, appellant, Stacey Carna, entered into a two-year administrator's contract for employment with appellee, Teays Valley Local School District Board of Education, as the principal of Ashville Elementary

School. Carna received positive performance evaluations from Teays Valley's assistant superintendent, Robert Thompson, in November 2006 and again in February 2007. But after the Ohio Achievement Tests were administered at Ashville Elementary School in the spring of 2007, Carna was placed on administrative leave due to allegations by secretaries and teachers that Carna had illegally altered her students' answers on the tests. Carna steadfastly denied any wrongdoing and averred that those making the allegations were employees whom she, as principal, had disciplined. The school board was unmoved by Carna's protestations of innocence.

{¶ 3} In May 2007, Carna was placed on administrative leave "pending an investigation into possible improprieties during spring 2007" and replaced as principal because, according to Thompson, it "was felt she could no longer provide effective leadership for the district based on the alleged allegations [sic]." In June or July 2007, Thompson orally informed Carna that "she would not return to the district for the 2007-08 school year and at the conclusion of her contract she would not be recommended for another contract."[1] According to Carna, the meeting was on July 11, 2007, and she immediately told Thompson that she wanted a meeting with the board to discuss the nonrenewal of her contract.

{¶ 4} In written administrative evaluations dated December 15, 2007, and February 25, 2008, Thompson informed Carna that she would not be rehired for the 2007-2008 school year and that she would not be recommended for another contract. And in February 2008, Thompson expressly stated in an administrative evaluation given to Carna, "The superintendent intends to recommend to the Teays Valley School Board Stacey Carna's contract not be renewed for the 2008-09 school year."

---

1. Somewhat inconsistently, however, Thompson also told Carna that she would remain on paid administrative leave pending the outcome of an investigation of the allegations by the Ohio Department of Education. As noted below, ODE did not announce its decision until November 2008, more than seven months after the board voted not to renew Carna's contract.

{¶ 5} On March 17, 2008, two weeks before the statutory deadline in R.C. 3319.02(C) to determine the renewal and nonrenewal of contracts, the board voted not to renew Carna's contract. It did so (1) without giving Carna notice that it would decide her fate at the meeting, (2) without convening an executive session, and (3) without waiting for the Ohio Department of Education to complete its investigation of the allegations against Carna.

{¶ 6} Eight months later, in November 2008, ODE completed its consideration of the claims against Carna. After reviewing the evidence, which included the testimony of numerous witnesses over five days of hearings, ODE concluded that the evidence did not demonstrate that the achievement tests had been altered improperly. Moreover, ODE expressly found that even if the evidence had demonstrated that alterations had been made, there was not sufficient evidence from which to conclude that Carna was the culprit in any wrongdoing. ODE took no action against her.

{¶ 7} Even after her exoneration, the school board never honored Carna's request for a meeting to discuss the nonrenewal of her contract.

### Procedural History

{¶ 8} After her termination, Carna brought suit in the Pickaway County Common Pleas Court requesting mandamus relief, which we have held to be the appropriate device for a school administrator to use when seeking reemployment, damages, or back pay for nonrenewal of an employment contract. *See, e.g.*, *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 631 N.E.2d 150 (1994). The trial court denied relief and entered summary judgment for Teays Valley.

{¶ 9} The Fourth District Court of Appeals affirmed. In doing so, it properly identified the legal issue in this case: "[W]hether appellant has a clear legal right to reinstatement depends upon the meaning of the request provisions contained in R.C. 3[3]19.02(D). Thus, the crux of this case is whether appellant's

July 2007 request to meet with the Board constituted a request for 'a meeting as prescribed in division (D)(4).' " 2011-Ohio-1522, 2011 WL 1158643, at ¶ 11.

{¶ 10} In its analysis, the appellate court agreed with the trial court's conclusion that Carna's July 11, 2007 request did not constitute a request for a meeting as envisioned in R.C. 3319.02(D)(4):

> Appellant's July 11, [2007] request occurred in response to the assistant superintendent's statement, made approximately one year before her contract was set to expire, that the Board planned to not renew her contract. After that notification, appellant received at least two written administrative evaluations that, in essence, notified her that her contract would not be renewed. Both of these evaluations occurred in the year that her contract was set to expire. After she received these evaluations, she did not request a meeting with the board. R.C. 3[3]19.02(D)(4) governs a request for a meeting made "[b]efore [the board] tak[es] action to renew or nonrenew the contract." Although appellant's request in July 2007 occurred before the board took action to renew or nonrenew her contract, we agree with the trial court that the statute implies that *the request must occur not at any time before the board takes action, but at a time reasonably related to the board's impending decision*. To hold otherwise, as appellee argues, means that an administrator could request a meeting with the board the day after the administrator is hired under a two-year contract, then sit on that right until the board takes action on the contract, only to then complain that the board failed to honor the request for a meeting made nearly two years earlier.

(Emphasis added.) 2011-Ohio-1522, 2011 WL 1158643, at ¶ 15.

{¶ 11} The appellate court then held:

> The statutory scheme contemplates an administrator's requesting a meeting after three things occur: (1) the superintendent or his designee conducts the final evaluation of the administrator; (2) the administrator learns of the superintendent's intended recommendation, as indicated on the final evaluation under division (D)(2)(c)(ii); and (3) the board notifies the administrator of the contract's expiration date and her right to request a meeting. An administrator's request for a meeting during a conversation some seven months before the administrator's final evaluation and the superintendent's official recommendation to the board is not a basis for alleging a violation of division (D)(4).

*Id.* at ¶ 16.

{¶ 12} The court of appeals concluded:

> R.C. 3319.02(D)(2)(ii) [sic, (D)(2)(c)(ii)] requires that a preliminary and a final evaluation be conducted in the year that the administrator's contract is due to expire. The final evaluation must indicate the superintendent's intended recommendation to the board regarding the administrator's contract. R.C. 3319.02(D)(2)(ii) [sic, (D)(2)(c)(ii)]. The board must consider these evaluations when deciding whether to renew the administrator's contract. Id. Thus, without these evaluations, a board cannot take action on the administrator's contract. Not until the final evaluation does an administrator receive formal notice as

to whether the superintendent will recommend contract renewal. Construing the statute as a whole, we believe that it is the preliminary evaluation and the superintendent's intended recommendation that trigger[ ] the administrator's right to request a meeting with the board, except in those circumstances when the board notifies the administrator of the contract expiration date.

*Id.* at ¶ 17.

**{¶ 13}** We accepted Carna's discretionary appeal from the appellate court's judgment in favor of Teays Valley. 129 Ohio St.3d 1409, 2011-Ohio-3244, 949 N.E.2d 1004. In her appeal, Carna asserts a single proposition:

When a principal requests a meeting with the school board after being told in advance that her contract will not be renewed, the school board's failure to provide a meeting prior to voting on the principal's nonrenewal violates Section 3319.02(D)(4) of the Ohio Revised Code and requires automatic reinstatement of the principal pursuant to Section 3319.02(D)(5).

We agree.

## ANALYSIS

### *The Statutory Language*

**{¶ 14}** At the outset of our analysis, we begin with the statutory language of R.C. 3319.02, which is a remedial statute that must be construed liberally in favor of school administrators. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d at 219, 631 N.E.2d 150, citing *State ex rel. Smith v. Etheridge*, 65 Ohio St.3d 501, 605 N.E.2d 59 (1992), syllabus.

{¶ 15} The portion of the statute that is controlling here, R.C. 3319.02(D), establishes the procedural protections for school administrators and the protocols for facilitating the discussion between administrators and school boards about the renewal or nonrenewal of administrators' contracts. R.C. 3319.02(D)(4) states:

Before taking action to renew or nonrenew the contract of an assistant superintendent, principal, assistant principal, or other administrator under this section and prior to the last day of March of the year in which such employee's contract expires, the board shall notify each such employee of the date that the contract expires and that the employee may request a meeting with the board. Upon request by such an employee, the board shall grant the employee a meeting in executive session. In that meeting, the board shall discuss its reasons for considering renewal or nonrenewal of the contract. The employee shall be permitted to have a representative, chosen by the employee, present at the meeting.

{¶ 16} Thereafter, R.C. 3319.02(D)(5) states:

Nothing in division (D) of this section shall prevent a board from making the final determination regarding the renewal or nonrenewal of the contract of any * * * administrator. However, if a board fails to provide evaluations pursuant to division (D)(2)(c)(i) or (ii) of this section, or if the board fails to provide at the request of the employee a meeting as prescribed in division (D)(4) of this section, the employee automatically shall be reemployed at the same salary plus any increments that may be

authorized by the board for a period of one year, except that if the employee has been employed by the district or service center as an assistant superintendent, principal, assistant principal, or other administrator for three years or more, the period of reemployment shall be for two years.

{¶ 17} With the statutory language in mind, we proceed with the analysis of its meaning.

### *Principles of Statutory Interpretation*

{¶ 18} Venerable principles of statutory construction require that in construing statutes, we must give effect to every word and clause in the statute. *Boley v. Goodyear Tire & Rubber Co.,* 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 21. We must "read words and phrases in context and construe them in accordance with rules of grammar and common usage," *State ex rel. Russell v. Thornton,* 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11, and we may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording, *Weaver v. Edwin Shaw Hosp*., 104 Ohio St.3d 390, 2004-Ohio-6549, 819 N.E.2d 1079, ¶ 13, quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus. Instead, we must accord significance and effect to every word, phrase, sentence, and part of the statute, *id.*, and abstain from inserting words where words were not placed by the General Assembly, *Cassels*, 69 Ohio St.3d at 220, 631 N.E.2d 150, citing *State v. S.R.*, 63 Ohio St.3d 590, 594-595, 589 N.E.2d 1319 (1992).

{¶ 19} "No part [of the statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative." *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917). "Statutes must be construed, if possible, to operate sensibly and not to accomplish

foolish results." *State ex rel. Saltsman v. Burton*, 154 Ohio St. 262, 268, 95 N.E.2d 377 (1950).

{¶ 20} When we conclude that a statute's language is clear and unambiguous, we apply the statute as written, *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 9, giving effect to its plain meaning, *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. Here, we are presented with clear and unambiguous statutory language.

### Application to the Language of R.C. 3319.02(D)

{¶ 21} The court of appeals held that Carna's oral request on July 11, 2007, for a meeting with the board did not constitute a proper request under the statute because the request must occur at a time reasonably related to the board's impending decision. 2011-Ohio-1522, 2011 WL 1158643, at ¶ 15. Thus, although Thompson gave Carna oral notice on July 11, 2007, that her contract would not be renewed, and although Carna immediately asked Thompson for a meeting with the board per R.C. 3319.02(D)(4), the appellate court held that the statute required Carna to request a meeting with the board *after* receiving the two written administrative evaluations that renotified her that her contract would not be renewed. 2011-Ohio-1522, 2011 WL 1158643, ¶ 17. The plain language used by the General Assembly in R.C. 3319.02, however, does not support the appellate court's conclusion.

{¶ 22} The court of appeals concluded that a request under R.C. 3319.02(D)(4) must occur in the context of an impending contract renewal. We agree generally, but find the statutory language, not the context of contract renewal, to control here.

{¶ 23} Contrary to the appellate court's conclusion, nothing in the language of the statute, which clearly contemplates the context of contract renewal, requires that the request for a meeting occur after the board makes a final

evaluation and informs the administrator that the contract will not be renewed, and after the board gives the administrator notice of her right to request a hearing. Rather, R.C. 3319.02(D)(4) plainly and simply states that notice must be given "[b]efore taking action to renew or nonrenew the contract." There is no temporal restriction that requires the request for a meeting to occur at any given time, and no proper basis from which to conclude that the request for a meeting may not be made until after final evaluation.[2] Had the General Assembly intended for the request for a meeting to be dependent on any temporal specificity, it would have included that specificity in the statute itself, as it did in other sections of this statute. *See, e.g.*, R.C. 3319.02(C) (mandating that decisions on the reemployment of any school administrator must be decided at "any regular or special meeting" before the last day of March in the year in which the contract is to expire).

{¶ 24} The appellate court improperly included words in the statute that were not there and ignored words that were there. *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52. We previously have cautioned against "judicial legislation" by adding words to R.C. 3319.02, and we reiterate that caution again. *State ex rel. Kelley v. Clearcreek Local School Dist. Bd. of Edn.,* 52 Ohio St.3d 93, 95, 556 N.E.2d 173 (1990). The statutory language of R.C. 3319.02(D) required only that Carna request the meeting, not that she do so after a final evaluation and after the board notified her of her statutory right to the meeting.

{¶ 25} Indeed, it is undisputed here that the board never gave Carna notice of her rights under R.C. 3319.02. Thus, using the appellate courts' reasoning, even today—four years after first being informed that her contract would not be

---

2. Although R.C. 3319.02(D)(2) requires that certain performance evaluations be made, nothing in the statute ties the timing of the evaluations to the timing of the request for a meeting.

renewed—Carna still would be unable to request the meeting. The General Assembly certainly did not intend such an absurd result.

{¶ 26} We hold that upon an administrator's learning that her contract will not be renewed, R.C. 3319.02(D) permits the administrator to request a meeting with the board to discuss the reasons for nonrenewal without having to await a final evaluation or notice from the board that she has the right to the hearing. To hold otherwise would render R.C. 3319.02(D)'s provisions meaningless. *See Phillips v. W. Holmes Local School Dist. Bd. of Edn.*, 5th Dist. No. CA-407, 1990 WL 41584, *2.

{¶ 27} Finally, we disagree with the appellate court that our interpretation of R.C. 3319.02(D) is ripe for gamesmanship and means that "an administrator could request a meeting with the board the day after the administrator is hired under a two-year contract, then sit on that right until the board takes action on the contract, only to then complain that the board failed to honor the request for a meeting made nearly two years earlier." 2011-Ohio-1522, 2011 WL 1158643, ¶ 15.

{¶ 28} R.C. 3319.02(D)(4) requires the board to meet in executive session with the administrator to discuss the reasons for nonrenewal only after an administrator has been informed that her contract will not be renewed, and only after being so informed may an administrator request a meeting with the school board to discuss the nonrenewal of her contract. That is precisely what happened here.

{¶ 29} After two favorable evaluations in the first year of her contract, Carna was placed on administrative leave pending an ODE investigation into allegations that she improperly altered achievement test answers and was orally told in July 2007 by Thompson, an assistant superintendent who had previously evaluated her work, that her contract would not be renewed. Upon that first notice of nonrenewal, Carna requested a meeting with the board. Five months

later, Thompson confirmed in writing what he had initially told Carna: her contract would not be renewed.[3] That written notice may have satisfied the board's obligations under R.C. 3319.02 (D)(2)(a), but the board still failed to satisfy its obligation under R.C. 3319.02(D)(4), which states that "the board shall grant the employee a meeting in executive session."[4] Given the context in which Carna's claim arises, i.e., one in which the administrator requests an R.C. 3319.02(D)(4) meeting after she is told that her contract will not be renewed, our holding is proper. We intimate no opinion about the starkly different hypothetical scenario described by the court of appeals.

## CONCLUSION

{¶ 30} R.C. 3319.02(D) sets forth the procedural protections available to school administrators during the decision-making process on the nonrenewal of their employment contracts with boards of education. Carna presented evidence that she requested those protections but that her request was not honored by the board. The General Assembly has determined that if the administrator requests that such a meeting be held, the board must hold it in executive session to discuss the renewal or nonrenewal of the contract. There is no legislative command that the request for a meeting occur after administrative evaluations are complete. Thus, we must reverse the judgment of the court of appeals and vacate the

---

3. In fact, in the December 2007 evaluation, Thompson expressly referred to his prior oral statements to Carna, noting:

> Stacey Carna is in the second year of a two year contract. Kyle Wolfe and I met with Stacey Carna in early June to discuss her status with the district. *At this meeting Stacey was told she would not return to the district for the 2007-08 school year and at the conclusion of her contract she would not be recommended for another contract.* Stacey was also told that she would remain on paid administrative leave pending Ohio Department of Education investigation and outcome.

(Emphasis added.)

4. Although the board voted not to renew Carna's contract on March 17, 2008, in a routine, regularly scheduled, public meeting, that meeting did not fulfill the board's obligation under R.C. 3319.02(D)(4), which requires that the requested meeting be held in executive session.

summary judgment against Carna. We remand this cause to the common pleas court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

————————————

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, for appellant.

Williams & Petro Co., L.L.C., Richard A. Williams, and Susan S. R. Petro, for appellee.

Manos, Martin, Pergram & Deitz Co., L.P.A., and Dennis L. Pergram, urging reversal for amici curiae, Ohio Association of Elementary School Administrators and Ohio Association of Secondary School Administrators.

————————————