Fischer, J., dissenting.
*425 {¶ 121} I respectfully dissent and would grant the requested writs of mandamus. Relators, Cincinnati Enquirer, GateHouse Media, d.b.a. Columbus Dispatch, and reporter Holly Zachariah, are entitled to the final autopsy reports that they requested. Based on a plain reading of the relevant statutory provisions, the final autopsy reports requested are "the detailed descriptions of the observations written during the progress of an autopsy and the conclusions drawn from those observations filed in the office of the coroner under [ R.C. 313.13(A) ]" ("13(A) Records"). 13(A) Records are public records subject to disclosure. R.C. 313.10(A)(1) and (B). 13(A) Records are not exempt from disclosure because they are distinct from "records of a deceased individual that are confidential law enforcement investigatory records", R.C. 310.10(A)(2)(e) ("10(A)(2)(e) Records"), and the other types of records exempt from disclosure under R.C. 313.10(A)(2). See R.C. 313.10(A)(2) and 313.10(G)(1). If the General Assembly wishes to alter those provisions, it may do so, but the provisions as currently worded require that the final autopsy reports be released.
I. LEGAL ANALYSIS
A. Under R.C. 313.10(A)(1), final autopsy reports are public records
{¶ 122} Relators assert that the requested final autopsy reports are public records pursuant to R.C. 313.10(A)(1) and 149.43. Records of the coroner, including but not limited to "the detailed descriptions of the observations written during the progress of an autopsy and the conclusions drawn from those observations filed in the office of the coroner under [ R.C. 313.13(A) ]" are public records. R.C. 313.10(A)(1). Both relators and respondents, Pike County Coroner's Office and Pike County Coroner David Kessler (collectively, "PCCO"), acknowledge that the final autopsy reports constitute 13(A) Records. I agree that the final autopsy reports requested by relators are 13(A) Records and are, therefore, public records.
*97 B. Final autopsy reports are not 10(A)(2)(e) Records
{¶ 123} PCCO argues that the requested final autopsy reports are exempt from disclosure as public records because they are also "records of a deceased individual that are confidential law enforcement investigatory records" pursuant to R.C. 313.10(A)(2)(e). PCCO argues that a plain reading of the statute, with particular focus on the language "[e]xcept as otherwise provided in this section" included in R.C. 313.10(A)(1), demonstrates that the final autopsy reports fall within the 10(A)(2)(e) Records exception. The majority generally agrees with this conclusion.
{¶ 124} However, to conclude that the final autopsy reports constitute 10(A)(2)(e) Records is to ignore a plain reading of the text of the statute and to render part of the statute superfluous. 13(A) Records and 10(A)(2)(e) Records are separate and distinct types of records under R.C. 313.10(A) and 313.10(G)(1). For this reason, the final autopsy reports are not 10(A)(2)(e) Records and are not exempt from disclosure pursuant to R.C. 313.10(A)(2)(e).
1. Principles of Statutory Interpretation
{¶ 125} The text of the statute is the primary and initial means of explaining a law. E.g. , Hughes v. Aircraft Co. v. Jacobson , 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). "When construing a statute, we first examine its plain language and apply the statute as written when the meaning is clear and unambiguous." Medcorp, Inc. v. Dept. of Job & Family Servs. , 121 Ohio St.3d 622, 2009-Ohio-2058, 906 N.E. 1125, ¶ 9. Ambiguity exists only when *426 the statutory language is "capable of bearing more than one meaning." Dunbar v. State , 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16.
{¶ 126} We must give effect to the words used, refraining from inserting or deleting words. Cleveland Elec. Illum. Co. v.Cleveland , 37 Ohio St.3d 50, 53-54, 524 N.E.2d 441 (1988). "The words used must be afforded their usual, normal, and/or customary meanings." Medcorp at ¶ 9. "[W]ords in a statute do not exist in a vacuum." D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health , 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. We remain careful "not to 'pick out one sentence and disassociate it from the context' " but instead focus our attention on the " 'four corners of the enactment' " in order to determine legislative intent. Jacobson v. Kaforey , 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8, quoting Black Clawson Co. v. Evatt , 139 Ohio St. 100, 104, 38 N.E.2d 403 (1941). If a statute is unambiguous, "inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate." Dunbar at ¶ 16 ; accord State v. Brown , 142 Ohio St.3d 92, 2015-Ohio-486, 28 N.E.3d 81, ¶ 10.
*98 {¶ 127} " 'No part [of the statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.' " (Brackets sic.) State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn. , 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 19, quoting State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn. , 95 Ohio St. 367, 373, 116 N.E. 516 (1917).
2. Plain-Reading Analysis of R.C. 313.10
{¶ 128} The plain language of the text of R.C. 313.10(A) demonstrates that 13(A) Records and 10(A)(2)(e) Records are separate and distinct types of records. R.C. 313.10(A)(1) states:
Except as otherwise provided in this section, the records of the coroner who has jurisdiction over the case, including, but not limited to , the detailed descriptions of the observations written during the progress of an autopsy and the conclusions drawn from those observations filed in the office of the coroner under [ R.C. 313.13(A) ], made personally by the coroner or by anyone acting under the coroner's direction or supervision, are public records.
(Emphasis added.) The above provision provides a nonexhaustive list of specific records of the coroner that are public records. See Colbert v. Cleveland , 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 14 ; State Farm Mut. Auto. Ins. Co. v. Grace , 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, ¶ 27. 13(A) Records, i.e., final autopsy reports, are the example of public records that was explicitly identified by the General Assembly in this provision.
{¶ 129} In contrast to R.C. 313.10(A)(1), which identifies final autopsy reports as public records, R.C. 313.10(A)(2) provides the General Assembly's separate, specific, and exhaustive list of the records in the coroner's office that "are not public records." (Emphasis added.) In this list, the General Assembly included 10(A)(2)(e) Records, among other records, that are not public records. See R.C. 313.10(A)(2)(a) through (f). 13(A) Records are not included in this list of specific, nonpublic records of the coroner. Because 13(A) Records are not included in this exhaustive list of nonpublic records of the coroner, they are *427 public records subject to disclosure. This conclusion comports with the general rule of statutory construction expressio unius est exclusio alterius, which provides that "the expression of one or more items of a class implies that those not identified are to be excluded." State v. Droste , 83 Ohio St.3d 36, 39, 697 N.E.2d 620 (1998).
{¶ 130} PCCO argues that because R.C. 313.10(A)(1) includes the phrase "[e]xcept as otherwise provided in this section," 13(A) Records can constitute *99 10(A)(2)(e) Records. But this argument ignores the clear structure and language of R.C. 313.10(A). Records of the coroner are generally public records unless they are specifically exempted from disclosure. R.C. 313.10(A)(1) and (2). The only exemptions listed are those in R.C. 313.10(A)(2) and, as previously noted, 13(A) Records are not listed among these exemptions. Therefore, PCCO's argument fails.
{¶ 131} The text of R.C. 313.10(G)(1) further supports the conclusion that 13(A) Records are distinct from 10(A)(2)(e) Records. That provision lists the "[f]ull and complete records of the coroner"; the list includes, but is not limited to, all the records listed in R.C. 313.10(A)(1) and (2) -thus, the list specifically includes both 13(A) Records and 10(A)(2)(e) Records. R.C. 313.10(G)(1)(a) and (f). R.C. 313.10(G) states:
As used in this section:
(1) "Full and complete records of the coroner" includes, but is not limited to, the following:
(a) The detailed descriptions of the observations written by the coroner or by anyone acting under the coroner's direction or supervision during the progress of an autopsy and the conclusions drawn from those observations that are filed in the office of the coroner under [ R.C. 313.13(A) ] ;
(b) Preliminary autopsy and investigative notes and findings made by the coroner * * *;
(c) Photographs of a decedent made by the coroner * * *;
(d) Suicide notes;
(e) Medical and psychiatric records provided to the coroner * * * under [ R.C. 313.091 ];
(f) Records of a deceased individual that are confidential law enforcement investigatory records as defined in [ R.C. 149.43 ] ;
(g) Laboratory reports generated from the analysis of physical evidence by the coroner's laboratory that is discoverable under Criminal Rule 16.
(Emphasis added.) The General Assembly's inclusion of both types of records in the text of the list of the "[f]ull and complete records of the coroner" establishes that 13(A) Records and 10(A)(2)(e) Records are separate and distinct types of records of the coroner.
{¶ 132} The majority's determination that 13(A) Records, i.e., final autopsy reports, constitute 10(A)(2)(e) Records renders R.C. 313.10(G)(1)(a) superfluous.
*100 The majority's reading of the statute effectively subsumes any and all 13(A) Records within the 10(A)(2)(e) Records exception and fails to treat each type of record distinctly, as directed by the statute. See R.C. 313.10(G)(1)(a) and (f). Because we must give effect to "every word, phrase, sentence, and part of the statute," Carna , 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, at ¶ 18, to avoid interpretations that render a provision meaningless or inoperative, I cannot support the majority's conclusion that the requested *428 final autopsy reports are exempt from public disclosure as 10(A)(2)(e) Records.
{¶ 133} Although the desire to protect the confidentiality of investigatory records is a laudable and more-than-understandable goal, we must not read the 10(A)(2)(e) Records exception as a catchall provision for any record that may be useful to an investigation, including final autopsy reports. Interpreting 13(A) Records to be 10(A)(2)(e) Records not only ignores a plain reading of the statute but also is comparable to rewriting the statute to include the 10(A)(2)(e) Records exception as an umbrella provision to all records of the coroner. This court must refrain from rewriting the statute on the basis that it thereby improves the law. Seeley v. Expert, Inc. , 26 Ohio St.2d 61, 71, 269 N.E.2d 121 (1971). The General Assembly can rewrite the statute if it so desires, but that is not our role as part of the judicial branch. See Article II, Section 1 and Article IV, Section 1, Ohio Constitution ; State v. Smorgala , 50 Ohio St.3d 222, 224, 553 N.E.2d 672 (1990).
{¶ 134} Therefore, in order to avoid reading R.C. 313.10 in such a manner as to make parts of the statute superfluous, I conclude that a plain reading of R.C. 313.10(A)(1) and (2) compels the conclusion that the requested final autopsy reports are public records pursuant to R.C. 313.10(A)(1) and are not exempt as 10(A)(2)(e) Records under R.C. 313.10(A)(2)(e). Since we can resolve this issue based on a plain reading of R.C. 313.10, this court should not engage in an analysis or review of the legislative intent, legislative history, public policy, or the consequences of an interpretation. See Dunbar , 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, at ¶ 16.
{¶ 135} Because relators have demonstrated by clear and convincing evidence that the requested final autopsy reports are R.C. 313.13(A) public records and that PCCO, as custodian of those records, has a clear legal duty to provide relators with the records pursuant to R.C. 313.10(A)(1) and 149.43(B), I conclude that relators are entitled to the requested writs of mandamus.
C. Statutory damages, attorney fees, and court costs
{¶ 136} Relators also request reasonable attorney fees, statutory damages, and court costs. I conclude that relators are not entitled to statutory damages but should be awarded reasonable attorney fees and court costs.
*101 1. Statutory Damages
{¶ 137} I agree with the majority that relators are not entitled to statutory damages as provided under former R.C. 149.43(C)(1), 2015 Am.Sub.H.B. No. 64. However, I would deny relators statutory damages not based on the majority's finding that PCCO redacted and released the final autopsy reports within a reasonable amount of time but because relators failed to submit their public-records requests by hand delivery or certified mail pursuant to former R.C. 149.43(C)(1). See State ex rel. DiFranco v. S. Euclid , 8th Dist. Cuyahoga No. 97823, 2012-Ohio-5158, 2012 WL 5429905, ¶ 3 ; compare State ex rel. Caster v. Columbus , 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 52.
2. Attorney Fees
{¶ 138} The majority denies the requested writs of mandamus and therefore concludes that relators are not entitled to attorney fees under former R.C. 149.43(C)(2)(c), 2015 Am.Sub.H.B. No. 64. Because I would grant relators the requested writs of mandamus, I would also determine whether relators should be awarded attorney fees.
{¶ 139} "If the court renders a judgment that orders the public office or the person *429 responsible for the public record to" produce requested public records, attorney fees may be awarded to the requesting party. Former R.C. 149.43(C)(2)(b), 2015 Am.Sub.H.B. No. 64. The statute provides circumstances listed in former R.C. 149.43(C)(2)(b)(i) and (ii) in which the court shall award attorney fees ("mandatory attorney fees"). Id. Relators, however, are not entitled to mandatory attorney fees under former R.C. 149.43(C)(2)(b)(i) or (ii) as PCCO provided its initial response to the public-records request within the time allowed and did not promise relators a specific time that the records would be produced.
{¶ 140} This court may award relators attorney fees pursuant to former R.C. 149.43(C)(2)(b) ("discretionary attorney fees") if PCCO did not promptly prepare the public records and make them available within a reasonable period of time as required by R.C. 149.43(B)(1), 2015 Am.Sub.H.B. No. 64.
{¶ 141} PCCO argues that relators should not be granted any attorney fees, even discretionary attorney fees, because PCCO acted in accordance with former R.C. 149.43(C)(2)(c). Specifically, PCCO asserts that it "served the public policy of ensuring a successful law enforcement investigation of the Pike County homicides."
{¶ 142} Arguably, State ex rel. Dayton Newspapers, Inc. v. Rauch , 12 Ohio St.3d 100, 465 N.E.2d 458 (1984), supported PCCO's assertion that it had a "reasonabl[e] belie[f]" that the final autopsy reports contained confidential law-enforcement investigatory records and were, therefore, exempt as 10(A)(2)(e) Records that PCCO could withhold and thereby serve the public interest.
*102 {¶ 143} PCCO denied the public-records request for the final autopsy reports in total and then later released portions of the reports. Therefore, PCCO's release of the redacted final autopsy reports demonstrates that PCCO did not believe that the unredacted portions , which PCCO originally withheld, fell under the 10(A)(2)(e) Records exception. Thus, as a matter of logic, once relators requested the records, PCCO was required to redact them promptly and release the redacted reports within a reasonable period of time. See former R.C. 149.43(C)(2)(b) and (B)(1).
{¶ 144} PCCO released the redacted autopsy reports to relators 59 days after relators' requests. The majority asserts (for purposes of determining whether relators are entitled to statutory damages) that this is a reasonable amount of time in which to redact and release the reports, specifically due to the magnitude of the investigation into the murders and the corresponding need to redact the reports with care. I disagree.
{¶ 145} As recognized by the majority, whether public records were released within a reasonable period of time depends largely on the facts of each case. See State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn. , 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 37. PCCO had a duty to promptly prepare and release the unredacted portions of the final autopsy reports, meaning " ' "without delay and with reasonable speed." ' " Id. , quoting State ex rel. Wadd v. Cleveland , 81 Ohio St.3d 50, 53, 689 N.E.2d 25 (1998), quoting Black's Law Dictionary 1214 (6th Ed.1990). PCCO argues that "[t]he two months it took for redactions to be made to these eight reports to protect information crucial to one of the largest criminal investigation [sic] conducted by the state is not unreasonable." PCCO may be exaggerating its burden. PCCO consulted directly with the attorney general's office to redact the eight autopsy reports. The autopsy reports were consistent in organization and general descriptions of the examinations.
*430 The reports totaled 66 pages, meaning that redactions were made to about one and one-tenth of a page per day. After reviewing both the redacted and unredacted autopsy reports, I conclude that taking 59 days to redact and release the 66 pages of the autopsy reports was not reasonable.
{¶ 146} Therefore, I would hold that PCCO failed to provide the final autopsy reports within a reasonable period of time pursuant to former R.C. 149.43(B)(1) and that relators should be awarded discretionary attorney fees.
3. Court Costs
{¶ 147} Because I would grant relators' requests for writs of mandamus ordering PCCO to comply with R.C. 149.43(B) and 313.10(A) and (B), I would award relators court costs pursuant to former R.C. 149.43(C)(2)(a), 2015 Am.Sub.H.B. No. 64.
*103 II. CONCLUSION
{¶ 148} Relators requested final autopsy reports that are public records pursuant to R.C. 313.10(A)(1), and those records are not exempt from disclosure as 10(A)(2)(e) Records under R.C. 313.10(A)(2)(e). I respectfully dissent and conclude that relators are entitled to the requested writs of mandamus and should be awarded attorney fees and court costs.
O'Donnell, J., concurs in the foregoing opinion.