[Cite as *Newcomer v. Natl. City Bank*, 2014-Ohio-3619.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

| | |
|---|---|
| David C. Newcomer, Trustee, et al. | Court of Appeals No. WM-12-007 |
| Appellants | Trial Court No. 20074003 |
| v. | |
| National City Bank | **DECISION AND JUDGMENT** |
| Appellees | Decided: August 22, 2014 |

* * * * *

Timothy A. Shimko and John Shaffer, for appellants.

Daniel J. Buckley, Lisa Babish Forbes, Elizabeth E. W. Weinewuth, Elizabeth Davis Conway, and Ralph W. Gallagher, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal by appellants David Newcomer and C. Tucker Cheadle, Trustees for the Ruth Markey Trust, and Philip Lisle, Marcia Lisle, and Janet Kates, each trust beneficiaries, of a judgment of the Williams County Court of Common Pleas,

Probate Division, journalized on September 24, 2012.  Appellee is National City Bank ("NCB").  Appellants brought suit against NCB for alleged breaches of fiduciary duties by NCB as trustee of the Ruth Markey Trust.  The case proceeded to a bench trial in June 2012, and in the September 24, 2012 judgment, the trial court entered judgment in favor of NCB on all claims.  Appellants filed a timely notice of appeal to this court of the judgment.

## Ruth E. Markey Inter Vivos Trust

{¶ 2} Ruth E. Markey established a revocable inter vivos trust in 1957 and named NCB as trustee.  The trust became irrevocable upon Ruth Markey's death in 1960.  Ruth Markey's husband, John C. Markey, survived her.  Upon Mr. Markey's death in 1970, the trust divided into three equal parts, pursuant to ¶ 2.3 of the trust agreement –  one part each for the benefit of Ruth Markey's surviving children, Lorance W. Lisle (referred to as Mr. Lisle or Bill Lisle), John R. Markey, and Catherine Markey Anderson.  Mr. Lisle's sub-trust is the only trust at issue in this case.

{¶ 3} The Markey Trust agreement established a trust Advisory Committee with rights, powers, discretions, and duties set forth in Article V of the Trust.  As we discuss in detail later in this decision, trades in the Trust's portfolio account required the consent of the Advisory Committee.

{¶ 4} The original Advisory Committee members were Mr. Lisle, John R. Markey, and Ruth Markey's nephew, John F. Neff.  Markey Trust ¶ 5.1.  John F. Neff resigned as

2.

a member of the Advisory Committee on December 30, 1965. Catherine M. Anderson was appointed by the remaining members of the Advisory Committee (Mr. Lisle and John R. Markey) on that date to serve as his replacement.

{¶ 5} On September 23, 1970, after the division of the Ruth Markey Trust into three sub-trusts, the three Advisory Committee members (John R. Markey, Catherine M. Anderson, and Mr. Lisle) executed an agreement providing for a cross-delegation of rights, powers, and discretions as to the three sub-trusts. The agreement empowered each to act individually with full Advisory Committee authority with respect to their respective sub-trusts.

{¶ 6} Catherine Anderson died in 1995. John R. Markey died in 1998. After John R. Markey's death, Mr. Lisle was the only member of the trust advisory committee. On August 31, 2006, Mr. Lisle appointed C. Tucker Cheadle and John C. Markey II to serve as members of the Advisory Committee and resigned from his membership on the committee.

{¶ 7} In December 2006, NCB was removed as trustee of the Ruth Markey Trust and David Newcomer and C. Tucker Cheadle appointed as successor trustees of the trust. Appellants filed a complaint alleging multiple claims of breach of fiduciary duties by NCB on September 15, 2007.

{¶ 8} Appellants assert ten assignments of error on appeal:

3.

## Assignments of Error

1.  The trial court erred as a matter of law when it ruled that appellants' claims for misconduct occurring prior to September 2003 were barred by the application of R.C. 2305.09.

2.  The trial court erred as a matter of law by ruling that appellee could only be liable for actions taken in bad faith or in willful default after September of 2003 and that the cumulative conduct of appellee could not be considered to establish a claim for willful default or reckless indifference.

3.  The trial court erred as a matter of law in failing to hold that the accumulated failures of appellee in its administration of the Markey Trust demonstrate a willful default and a reckless indifference to the terms of the trust and the interests of the beneficiaries.

4.  The trial court erred, as a matter of law, when it ruled that appellants were required to prove their claims against appellee by clear and convincing evidence.

5.  The trial court erred in holding, as a matter of law, that appellee had no legal duty to pay California income taxes earned by the trust for the years 1970 through 2006.

6. The court erred by holding that the bank's overcharging of fees for over 15 years did not constitute bad faith, willful default, or reckless indifference.

7. NCB's failure to monitor the capacity of Bill Lisle to prudently manage the trust after 1997, and its failure to inform the remainder beneficiaries of the trust or their interests in it until 2005 constituted a reckless indifference to the interests of the beneficiaries.

8. For eight (8) years, NCB's failure to enforce the terms of the trust requiring at least two trust advisors to serve on the committee at all times constituted a reckless indifference to the purpose of the trust and the interest of the beneficiaries.

9. The failure of the trustee to act only upon the written instructions or the subsequent written approval of the Advisory Committee constituted a reckless indifference to the purpose of the trust and the interests of the beneficiaries.

10. By 1999, the investment objectives chosen by NCB were recklessly indifferent to the purpose of the trust and to the interests of the beneficiaries of the trust.

{¶ 9} One asserting a claim of breach of fiduciary duty must establish the existence of a fiduciary duty, breach of that duty, and injury proximately caused by the

5.

breach. *Strock v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988); *Sudnick v. Klein*, 11th Dist. Geauga Nos. 2001-G-2356, 2001-G-2357, 2001-G-2358, and 2001-G-2365, 2002-Ohio-7341, ¶ 25.

{¶ 10} This appeal is from a trial court judgment after trial with the trial court sitting as the trier of fact. Factual challenges to a trial verdict are considered on appeal under a manifest weight of the evidence standard. There is a "presumption that the findings of the trier-of-fact were indeed correct." *Season Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment. *Id.* at fn3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603 at 191-192 (1978)

{¶ 11} The Ohio Supreme Court recognized in *Seasons Coal* that deference to the findings of the trial court in an appeal from a judgment after a bench trial "rests with the

knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflection and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal* at 80.

{¶ 12} The standard of review of a claim that a verdict is against the manifest weight of the evidence is the same in a civil case as it is in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17:

> "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Bracket material inserted in *Tewarson.*) *Id.* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} Fundamental to the analysis is that [j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**Statute of Limitations**

{¶ 14} NCB served as trustee of the Ruth Markey Trust from the trust's inception in 1957 until NCB was removed as trustee in December 2006. Appellants filed their complaint against NCB on September 15, 2007. The Ohio Trust Code ("OTC") became effective on January 1, 2007. Ohio established a statute of limitations specifically applicable to claims against trustees in the OTC, R.C. 5810.05.

{¶ 15} The trial court ruled that some of appellants' claims were barred prior to the time the OTC went into effect under R.C. 1339.69 or 2305.09 and the claims remained barred after the OTC went into effect, pursuant to R.C. 5811.03(B). Applying R.C. 5811.03(B), the court also ruled that R.C. 5810.05, the OTC statute of limitations, applied on claims that were not barred under any prior statute of limitations at the time the OTC went into effect.

{¶ 16} R.C. 1339.69 (C), now repealed, provided for a two year statute of limitations on claims by qualified beneficiaries against the trustees on matters described or disclosed in reports by inter vivos trustees:

> (C) A current report furnished by an inter vivos trustee under this
> section or during the usual course of business has binding legal effect
> regarding the matters described or disclosed in the report on the qualified
> beneficiary who received the report, on the legal representative who
> received the report on behalf of the qualified beneficiary who is under legal
> disability, and on the heirs and assigns of the qualified beneficiary who

received the report unless, notwithstanding section 2305.22 of the Revised Code, the qualified beneficiary, the legal representative of the qualified beneficiary, or any of the heirs or assigns of the qualified beneficiary institutes an action regarding matters described or disclosed in the report against the inter vivos trustee within two years from the date the report is furnished to the qualified beneficiary or legal representative of the qualified beneficiary.

{¶ 17} In its judgment, the trial court found that NCB had provided reports to Bill Lisle of the type identified in R.C. 1339.69 (C) and of the type providing notice of a claim under R.C. 5810.05(C)(4):

> The evidence is clear that defendant NCB provided written account statements to Mr. Bill Lisle from at least 1994 through 2006, which detailed every transaction, the overall account value, an inventory of the assets, market value of each asset, carrying cost (basis), capital gains and losses, overall asset allocation, fees and income received by the trust. See e.g. exhibits 407 and 410. I find that these monthly reports are adequate under R.C.1339.69 and put plaintiffs on notice for the information contained therein under R.C. 5810.05(C)(4).

{¶ 18} Under the trial court judgment, former R.C. 1339.69 bars all of appellants' claims concerning matters describe or disclosed in its written account statements unless the claims were brought within two years.

9.

{¶ 19} The trial court also held that R.C. 2305.09 also applied to bar claims.  The court held that prior to January 1, 2007, claims alleging breach of fiduciary duty were governed by the four year statute of limitations set forth in R.C. 2305.09.  The court held: "[s]ince plaintiffs' complaint was filed September 15, 2007, this statute bars plaintiffs' claims for action or inaction prior to September 14, 2003."

{¶ 20} Under assignment of error No. 1, appellants argued that the trial court erred as a matter of law when it ruled that claims arising from misconduct occurring prior to September 2003 are barred under R.C. 2305.09.  Appellants contend that the trial court should have applied the OTC statute of limitations, including its discovery rule under R.C. 5810.05(C), to all of appellants' claims.

{¶ 21} Appellants argue that the plain and unambiguous meaning of the phrase "notwithstanding section 2305.09 of the Revised Code," in R.C. 5810.05(C) requires this result.  Appellants contend that the phrase directs courts to apply the statute of limitations in R.C. 5810.05(C) after the OTC effective date to the exclusion of R.C. 2305.09.  The statutory language at issue reads:

> R.C. 5810.05 Limitation of action against trustee
>
> * * *
>
> (C) If division (A) of this section does not apply, *notwithstanding section 2305.09 of the Revised Code*, a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within four years after the first of the following to occur:

10.

＊ ＊ ＊

(4) The time at which the beneficiary knew or should have known of the breach of trust.  (Emphasis added.)

{¶ 22} NCB contends that R.C. 5811.03(B) instructs that the new statute of limitations established under the Ohio Trust Code (R.C. 5810.05) does not revive claims that were barred under prior applicable statutes of limitations that were in effect before the statutory change.  R.C. 5811.03 concerns the application of the OTC to existing relationships:

R.C. 5811.03 Application to existing relationships

＊ ＊ ＊

(B) If a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before the effective date of Chapters 5801. to 5811. of the Revised Code, that statute *continues to apply* to the right even if it has been repealed or superseded.  (Emphasis added.)

{¶ 23} R.C. 5811.03 is based upon Section 1106 of the Uniform Trust Code.  Both are entitled "Application to Existing Relationships."  Section 1106(b) of the Uniform Trust Code in all pertinent respects is identical to the wording of R.C. 5811.03(B).

{¶ 24} The Official Comment to the Section 1106 of the Uniform Trust Code is instructive.  It explains:

11.

This Code cannot be fully retroactive, however. Constitutional limitations preclude retroactive application of rules of construction to alter property rights under trusts that became irrevocable prior to the effective date. Also, *rights already barred by a statute of limitation or rule under former law are not revived by a possibly longer statute or more liberal rule under this Code*. (Emphasis added.)

{¶ 25} Although the official comments to the Uniform Trust Code are not part of the OTC, Ohio courts have cited and considered comments to the UTC in applying comparable provisions of the OTC. *Vaughn v. Huntington Natl. Bank Trust Div.,* 5th Dist. Tuscarawas No. 2008 AP 03 0023, 2009-Ohio-598, ¶ 20-25.

{¶ 26} In interpreting a statute, we are to consider the statute as a whole and give effect to every word and clause in the statute:

Venerable principles of statutory construction require that in construing statutes, we must give effect to every word and clause in the statute. *Boley v. Goodyear Tire & Rubber Co.,* 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 21. We must "read words and phrases in context and construe them in accordance with rules of grammar and common usage," *State ex rel. Russell v. Thornton,* 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11, and we may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording, *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, 819

12.

N.E.2d 1079, ¶ 13, quoting *Wachendorf v. Shaver,* 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus. Instead, we must accord significance and effect to every word, phrase, sentence, and part of the statute, *id.,* and abstain from inserting words where words were not placed by the General Assembly, *Cassels,* 69 Ohio St.3d at 220, 631 N.E.2d 150, citing *State v. S.R.,* 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319 (1992).

"No part [of the statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative." *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.,* 95 Ohio St. 367, 373, 116 N.E. 516 (1917). "Statutes must be construed, if possible, to operate sensibly and not to accomplish foolish results." *State ex rel. Saltsman v. Burton,* 154 Ohio St. 262, 268, 95 N.E.2d 377 (1950). *State ex rel. Carna v. Teays Valley Local. School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18-19.

{¶ 27} The interpretation offered by appellants of the phrase "notwithstanding section 2305.09 of the Revised Code" contained in R.C. 5810.05(C) conflicts with the instructions under R.C. 5811.03(B) on application of the OTC to existing relationships.

{¶ 28} In our view, construing the statutory scheme as a whole and specifically R.C. 5810.05 in context with R.C. 5811.03(B) provides a different result that gives effect to both statutes. This interpretation is in accord with the trial court's analysis.

13.

{¶ 29} We conclude first, that R.C. 5811.03(B) provides that where a statute of limitations against breach of trust claims commenced to run and barred breach of trust claims prior to the effective date of the OTC, such claims remain barred after the OTC went into effect. The claims are not revived by more liberal provisions of R.C. 5810.05. Second, where breach of trust claims are not barred by the applicable statute of limitations prior to the time when the OTC went into effect, then, in that event, the statute of limitations set forth in R.C. 5810.05 applies to the claim, notwithstanding the provisions of R.C. 2305.09.

{¶ 30} In their reply brief, appellants raise an additional claim of trial court error. In the brief, appellants argue that the statute of limitations under R.C. 1339.69 never commenced to run because remainder beneficiaries did not receive the monthly brokerage statements sent by NCB to Bill Lisle. The argument raises the issue of whether notice to the current beneficiary and trust advisory committee (notice to Bill Lisle) through brokerage statements operates as notice to remainder beneficiaries for purposes of running of the statute of limitations under R.C. 1339.69.

{¶ 31} NCB argues that appellants are barred from raising this argument on appeal and has filed a motion to strike the argument from appellant's reply brief. NCB contends (1) that appellants raised the R.C. 1339.69 argument as to claimed insufficiency of notice to remainder beneficiaries for the first time on appeal and (2) acknowledged to the trial court at a pretrial conference on April 17, 2012, that notice to Bill Lisle acted as notice for remainder beneficiaries, to start the running of the statute of limitations.

14.

{¶ 32} Appellants argue that this issue was preserved in its arguments that any consent by Bill Lisle to trustee misconduct did not bind remainder trustees and appellants' arguments that the applicable statute of limitations includes a discovery rule under R.C. 5810.05.

{¶ 33} We have reviewed the record including the transcript of the April 17, 2012 pretrial hearing. The record is clear that appellant failed to raise any argument in the trial court that the statute of limitations under R.C. 1339.69 did not commence to run against remainder beneficiaries because they were not provided brokerage statements that were provided Bill Lisle.

{¶ 34} Ohio appellate courts "can only reverse the judgment of a trial court if it finds error in the proceedings of such court." *State v. Ishmail*, 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500 (1978). We decline to consider arguments raised for the first time on appeal. *Tonti v. Hayes*, 6th Dist. Lucas No. L-05-1202, 2006-Ohio-2229, ¶ 25; *Perlmutter v. People's Jewelry Co.*, 6th Dist. Lucas No. L-04-1271, 2005-Ohio-5031, ¶ 29. Accordingly, we decline to consider appellants' argument that the statute of limitations under R.C. 1339.69 never commenced to run because the remainder beneficiaries did not receive the monthly brokerage statements sent by NCB to Bill Lisle

{¶ 35} We find assignment of error No. 1 not well-taken. We overrule NCB's motion to strike as moot.

{¶ 36} We consider the remaining assignments of error out of turn.

15.

{¶ 37} Under assignment of error No. 4, appellants assert that the trial court erred in ruling that the standard of proof for breach of fiduciary claims is clear and convincing evidence. Appellants argue that the preponderance of the evidence standard applies. The trial court relied on appellate decisions of this court and of the Eleventh District Court of Appeals in its ruling. *Higginbotham v. Higginbotham*, 6th Dist. Lucas No. L-84-174, 1984 WL 14405 (Nov. 9, 1984); *Poythress v. Clark*, 11th Dist. Ashtabula No. 2000-A-0017, 2001 WL 276896 (Mar. 16, 2001).

{¶ 38} NCB argues that decisions of this court in *Higginbotham*, of the Eleventh District Court of Appeals in *Poythress,* and of the Eighth District Court of Appeals in *Manchester v. Cleveland Trust Co.*, 84 Ohio Law Abs. 321, 168 N.E.2d 745 (8th Dist.1960) recognize that the clear and convincing evidence standard applies to breach of fiduciary duty claims.

{¶ 39} The *Higginbotham* case involved claimed breach of fiduciary duties under a power of attorney and claimed undue influence. Charles and Lida Higginbotham granted the power of attorney to their son, Robert Higginbotham, the defendant. The dispute concerned alleged breach of fiduciary duties by the son through use of the power of attorney to withdraw money from his parent's bank account.

{¶ 40} At trial, a bank employee testified that the defendant did not withdraw the money from the bank account, but that his father, an account holder, signed a withdrawal slip and withdrew the sums. *Higginbotham* at *1. Trial testimony did not indicate that

16.

the son had exercised the power or attorney or that he has supervised the withdrawal of funds by his father. *Id.* The defendant's spouse testified at trial that the father made a monetary gift of the money to the defendant. *Id.*

{¶ 41} This court affirmed a judgment for the defendant in the case, holding that "appellants failed to establish by clear and convincing evidence their allegations of undue influence and breach of fiduciary duty." *Id.*

{¶ 42} Appellants argue that *Higginbotham* is of limited precedential value because the court was not asked to determine the degree of proof necessary to prove a breach of trust in the case.

{¶ 43} Appellant's cite the Fourth District Court of Appeals decision in *Wrightsel v. Ross-Co Redi-Mic, Inc.*, 4th Dist. Ross No. 1791, 1993 WL 97780 (Mar. 26, 1993) as authority for the proposition that the preponderance of the evidence standard applies. *Wrightsel*, however, was an employment dispute and addressed the standard of proof when determining whether a closely held corporation or its majority shareholders violated a fiduciary duty to minority shareholders. *Id.* at *7.

{¶ 44} The Eleventh District's decision in *Polythress v. Clark* concerned claimed breach of duty of a trustee of a trust and claimed undue influence in creation of the trust. *Poythress*, 11th Dist. No. 2000-A-0017, 2001 WL 276896, at *1. With respect to the breach of trust claim, the court of appeals held that the plaintiffs "must demonstrate by clear and convincing evidence that * * * [the defendant] * * * breached her duties as

17.

trustee. *Id. *4.* The court reaffirmed this analysis in *Sudnick v. Klein*, 11th Dist. Geauga Nos. 2001-G-2356, 2001-G-2357, 2001-G-2358 and 2001-G-2365, 2002-Ohio 7341, in a case involving claimed breach of fiduciary duty by an executor of an estate:

> [A]ppellant's liability, if any, must be premised on the common-law doctrine of breach of fiduciary trust, in that he either exceeded the scope of his authority or failed to timely liquidate the estate. To be successful on such a clam, appellee had to prove, by clear and convincing evidence, the existence of a duty arising out of a fiduciary relationship, a failure to observe that duty, and injury resulting approximately therefrom. *Id.* at ¶ 25. (Citations omitted.).

{¶ 45} The Eighth District Court of Appeals applied the clear and convincing standard of proof to breach of trust claims in *Manchester v. Cleveland Trust Co.*, 84 Ohio Law Abs. at 328, 168 N.E.2d 745:

> There are few, if any, reported cases in Ohio which discuss the degree of proof required in an action to remove a trustee, or to enforce other relief short of removal. Our search of the Ohio authorities has not been very productive, but certainly the degree of proof should be more than a preponderance of the evidence. We believe, in case such as the one now before us, that , before a trustee can be charged with disloyalty, with a breach of trust, or with engaging in conflicting interests (unless the rule of

18.

'no further inquire' applies), those claiming such forms of misconduct are required to establish their case by clear and convincing evidence.

{¶ 46} Neither the Ohio Supreme Court decision in *Strock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988) nor the Ninth District Court of Appeals' decision in *Hamblin v. Daugherty*, 9th Dist. Medina Nos. 06CA0109-M and 06CA0112-M, 2007-Ohio-5893, argued by appellants, concern whether a claim for breach of fiduciary duty must be proved by clear and convincing evidence. Both cases involved rulings on motions to dismiss breach of fiduciary duty claims. The courts either upheld or required dismissal in both cases. *Strock* at 216-217; *Hamblin* at ¶ 25-27.

{¶ 47} *Strock* involved dismissal of a fiduciary duty claim against a minister as the claim was barred by R.C. 2305.29 (which abolished torts of alienation of affections and criminal conversation). *Strock* at 216. In *Hamblin*, the court of appeals ruled that dismissal of the breach of fiduciary duty claim was required due to lack of any duty owing by the defendant to plaintiffs. *Hamblin* at ¶ 26.

{¶ 48} In accordance with our prior decision in *Higginbotham* and decisions of the Eleventh and Eighth Districts Courts of Appeals, we hold that the burden of proof for breach of fiduciary claims is clear and convincing evidence and that the trial court did not err in applying that standard to appellants' breach of fiduciary duty claims.

{¶ 49} We find assignment of error No. 4 not well-taken.

{¶ 50} Under assignment of error No. 2, appellants argue first, that the trial court erred by ruling that NCB could only be liable for actions taken in bad faith or in willful

19.

default and second by holding that the cumulative conduct of NCB could not be considered to establish liability on the basis of willful default or reckless indifference. We address the second aspect of the assignment of error, dealing with appellants' claim that the trial court erred in failing to consider cumulative conduct to establish claims for willful default or reckless indifference in our consideration of assignment of error No. 3.

{¶ 51} The Ruth Markey Trust includes an exculpatory clause that limits the liability of the trustee for breach of trust. The exculpatory clause limits trustee liability to liability based upon bad faith or willful default. The trust agreement provides that the trustee:

> shall not be liable for any act or thing done or omitted to be done in good faith, or for any mistake or error of judgment, or otherwise except for bad faith or willful default. Ruth Markey Trust ¶ 4.1(p).

{¶ 52} Ohio, however, refuses to enforce exculpatory provisions beyond a specified minimum standard of liability set forth in R.C. 5810.08:

> R.C. 5810.08 Enforceability of trust terms relieving trustee of liability.
>
> A term of a trust relieving a trustee of liability for breach of trust is *unenforceable to the extent that it relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes*

*of the trust or the interests of the beneficiaries* or was inserted as the result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor. (Emphasis added.)

{¶ 53} The trial court found that neither party introduced evidence at trial addressing whether the exculpatory clause was inserted in the trust agreement as a result of abuse by the trustee of its relationship to Ruth Markey and concluded there was no basis to challenge the exculpatory clause on that ground.

{¶ 54} R.C. 5810.08 imposes a minimum standard of liability on the exculpatory clause such that the trustee remains liable for any breach of trust "committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries," regardless of the provisions of the trust exculpatory clause. The Markey Trust Agreement itself provides that trustee is liable for breach of trust where the trustee acted in bad faith or willful default.

{¶ 55} The parties agree that under the exculpatory clause as modified by R.C. 5810.08, trustee liability in this case is limited to breaches of trust committed in bad faith, in willful default, or in reckless indifference to the purposes of the trust or the interests of the beneficiaries. The trust agreement does not define "willful default." R.C. 5810.08 provides no definition for "reckless indifference to the purposes of the trust or the interests of the beneficiaries."

{¶ 56} Under assignment of error No. 2, appellants contend that the trial court erred when the court ruled that "willful default incorporates the concept of 'reckless

21.

indifference.'" and failed to recognize that claims for breach of trust committed with reckless indifference to the purpose of the trust or the interests of the beneficiaries presents a separate and different basis of trustee liability from than that imposed for conduct constituting bad faith or willful default.

{¶ 57} Appellants argue that reckless indifference involves conduct involving "somewhere between an intent to do wrong and mere negligence" and requires a showing of "conscious indifference to consequences." Appellants contend that the trial court erred because it failed to apply that liability standard to appellants' claims.

{¶ 58} The trial court considered liability based upon "willful default" and "reckless indifference" collectively and independently. Considered collectively, the court ruled that "willful default incorporates the concept of 'reckless indifference,'" and that "NCB is only liable to plaintiffs for actions taken in bad faith or in willful default."

{¶ 59} The Ohio Supreme Court, however, held in the subsequent decision of *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, that the terms "willful" and "reckless" "describe different and distinct degrees of care and are not interchangeable." *Id.* at paragraph one of the syllabus. The court held that the terms "have different meanings, involve different degrees of culpability, and are not interchangeable." *Id.* at ¶ 3. We agree under *Anderson* that trustee liability based upon a showing of bad faith, willful default, or reckless indifference constitute distinct and separate bases of liability as contended by appellants.

22.

{¶ 60} Considered independently, the court, nevertheless, rendered specific findings of fact in its judgment on the issues of bad faith, willful default, and reckless indifference on each of thirteen claims of misconduct advanced by appellants at trial:

{¶ 61} Plaintiffs have failed to prove by clear and convincing evidence that any of the following was an act of bad faith, willful default, or reckless indifference to the purposes of the Trust:

A. Failure to keep/maintain adequate records and provide the name to Mr. Lisle and his representatives

B. Overcharging Trustee Fees

C. Failure to file and pay taxes

D. Missing Continental Land and Fur Funds

E. Failure to Liquidate Trust in 1999

F. Inadequate Performance Reports

G. Failure to provide a copy of the trust to Bill Lisle or to advise him of his rights, duties, and discretions

H. A failure to advise Mr. Lisle that advisory committee requires two members

I. Defendant failed to act only upon the written direction of the advisory committee

J. Failure to develop a proper written investment objective

K. Failure to evaluate Bill Lisle as to his competency

23.

L. Failure to protect remaindermens' interest

M. Actions or Inactions by defendant NCB that affected the includibility of the trust assets in Mr. Bill Lisle's federal estate.

{¶ 62} In the judgment the trial court held that "[c]onduct is reckless if it creates risk substantially greater than that which is necessary to make his conduct negligent." The trial court held that reckless indifference "required an act done in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, reputation or property of others."

{¶ 63} In *Anderson*, the Ohio Supreme Court defined reckless conduct at paragraph 4 of the syllabus in similar terms:

> Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. (2 Restatement of the Law 2d, Torts, Section 500 (1965), adopted.) *Anderson* at paragraph four of the syllabus.

{¶ 64} In our view, the reckless indifference standard applied by the trial court in making specific findings of fact on each of the liability standards on each claim advanced by appellants comports with the analysis of the term "reckless" in *Anderson* and the definition of "reckless indifference" advanced by appellants.

{¶ 65} We find assignment of error No. 2 well-taken in part. We conclude, however, that any inconsistency in the trial court's judgment on treatment of willful

24.

default and reckless indifference as separate and distinct liability standards was cured by the trial court's determination of liability independently on each liability standard at the conclusion of its judgment.

### Enforcement of Membership Requirement of Advisory Committee

{¶ 66} Under assignment of error No. 8, appellants contend that the trust agreement required that the Advisory Committee include at least two members and that NCB breached its fiduciary duties and acted with reckless indifference to the purpose of the Trust and interests of trust beneficiaries by failing to enforce the two member requirement.

{¶ 67} Paragraph 5.5 of the Trust provides that the Advisory Committee is to have at least two members. Membership of the committee consisted of two or more members until John R. Markey died in 1998. After John R. Markey's death, Mr. Lisle was the only member of the advisory committee until August 31, 2006, when David Newcomer and Tucker Cheadle were appointed as members.

{¶ 68} As discussed earlier, after the deaths of Ruth Markey and of her husband, John C. Markey, the trust was divided into three sub-trusts, as provided in the Trust agreement. Ruth Markey Trust at ¶ 2.3-2.3(a) – one for each surviving child. Mr. Lisle, John R. Markey and Catherine Markey Anderson were the three surviving children.

{¶ 69} On September 23, 1970, the Advisory Committee consisted of Mr. Lisle, John R. Markey, and Catherine Markey Anderson. On that date, the three executed, as members of the Advisory Committee, a reciprocal cross delegation agreement. The trial

25.

court concluded in its judgment that the cross-delegation agreement gave "complete authority, control and discretion to each over their respective trusts." With respect to the Lisle sub-trust, the cross-delegation provided:

> The undersigned members of the Advisory Committee further delegate to Lorance W. Lisle the right to execute all of the rights, powers and discretions conferred upon the members of the Committee with respect to Trust #1-598-309 for the benefit of Lorance W. Lisle.

**{¶ 70}** No party has contested the validity of the cross-delegation agreement. The trial court held that, by execution of the agreement, Catherine Markey Anderson, John R. Markey and Bill Lisle "gave complete authority, control and discretion to each over their respective trusts. Neither John nor Catherine had any input into Bill's trust while alive."

**{¶ 71}** In the September 24, 2012 judgment, the trial court found that appellee's failure to advise Bill Lisle that it was necessary to appoint another member of the advisory board caused no harm to the plaintiffs. Additionally, the trial court found that it was sufficiently uncertain under the circumstances whether the two member requirement for the Advisory Committee continued to apply after the cross-delegation agreement and that it was reasonable to conclude that the Trust no longer required a two member Advisory Committee. The court noted that appellant "Tucker Cheadle [a co-trustee of the trust] opined, at one point, that there was no need for an advisory committee. See exhibit 328."

26.

**{¶ 72}** Appellants do not claim that trust law requires an advisory committee. NCB argues that ¶ 5.3 of the Trust expressly authorized members of the advisory committee "to delegate the right to exercise all or any of the rights, powers and discretions herein conferred upon such member or members to any other member or members. Two or more members may so delegate to the same member at the same time." NCB argues that Mr. Lisle's siblings did exactly that in 1970, and thereby granted all authority to Mr. Lisle to act as the Advisory Committee with respect to his trust from 1970 until Mr. Lisle resigned from the Advisory Committee in 2006.

**{¶ 73}** Under this analysis NCB contends from 1970 to 2006 there was no advisory committee function left for anyone other than Mr. Lisle to perform and that NCB as Trustee did not have the power to appoint another Advisory Committee member. Under ¶ 5.5 of the Trust, only the Advisory Committee itself has authority to appoint a new Advisory Committee member.

**{¶ 74}** In our view, the Advisory Committee was restructured in 1970 by the cross-delegation agreement to place all Advisory Committee authority for the Lisle sub-trust into a single person, Mr. Lisle. The trial court found that it was reasonable for the trustee to conclude under the circumstances that appointment of a second member of the Advisory Committee was not required. We find competent, credible evidence in the record supporting the trial court's finding.

**{¶ 75}** As NCB's failure to secure appointment of a second member of the Advisory Board was reasonable, the trial court did not err in concluding that the failure to

27.

act to secure another appointment did not constitute evidence of bad faith, willful default, or reckless indifference to the purposes of the trust or the interests of the beneficiaries by the trustee.

{¶ 76} We also conclude that there is competent, credible evidence in the record supporting the trial court's finding that evidence is lacking in the record to demonstrate that appellants were in any way damaged by failure to appoint a second member of the Advisory Committee after John Markey's death in 1998. Proof of damages is a necessary element of a breach of fiduciary duty claim. *Strock v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988); *Sudnick v. Klein*, 11th Dist. Geauga Nos. 2001-G-2356, 2001-G2357, 2001-G-2358, and 2001-G-2365, 2002-Ohio-7341, ¶ 25.

{¶ 77} The two findings present alternative grounds supporting the trial court's judgment on liability based upon failure to secure appointment of a second member to the Advisory Board.

{¶ 78} We find assignment of error No. 8 not well-taken.

### Requirement for Written Instructions

{¶ 79} Under assignment of error No. 9, appellants contend that sporadically prior to 2001 and exclusively afterwards NCB conducted trades on the Trust portfolio account without required written instructions or approval by Bill Lisle. Appellants contend that the Trustee's failure to act only upon written instructions or subsequent written approval of the Advisory Committee constituted a reckless indifference to the purpose of the trust and the interests of beneficiaries.

28.

{¶ 80} As outlined by the trial court in its judgment, the trust provides that the Trustee was to act upon instructions from the Advisory Committee, except in limited circumstances:

> The trust provides that defendant as trustee should take its instructions from the advisory committee. See paragraph 4.1 Powers of Trustee. It provides that the powers of the trustee, except those in paragraphs 2.2 and 2.3 of Article II, were to be exercised only at the discretion of the advisory committee. Paragraph 5.2.

{¶ 81} Paragraph 5.2 of the Trust directs how those instructions were to be communicated. Instructions may be provided:

> as a majority of the Advisory Committee may, from time to time, direct by an order or orders in writing signed by such members of the Committee and delivered to the Trustee. The subsequent written consent or ratification of a majority of the Advisory Committee shall have the same force and effect as a prior written direction.

{¶ 82} In its judgment, the trial court referred to a December 20, 1993 letter from Mr. Lisle to NCB expressing a concern that there could be adverse effects from a practice requiring his approval to buy or sell securities in advance:

{¶ 83} In fact, early on, Mr. Bill Lisle delivered to the bank a letter that he believed that there could be adverse effects due to delays if the bank always

29.

obtained his approval in advance.  See exhibit 62, p 00452.  Letter of December 20, 1973 from Mr. Lisle to NCB.  He was not opposed to a blanket approval.  This statement of authority was never revoked nor rescinded.

{¶ 84} NCB argues that the trial court was correct in determining that the December 20, 1973 letter gave a blanket approval for trading in exchange-listed securities.  The letter reads:

> When you make a decision to buy or sell it has been your practice to obtain my approval in advance.  Is this a provision set up in the original indenture?  It seems to me it might have an adverse effect due to delay in transmission.  It is highly unlikely that I could countermand your suggestion and therefore I would not be opposed to giving you blanket approval to execute any changes you would recommend.  This applies of course only to the listed securities.  Letter of Lorance W. Lisle, Exhibit 62, NCB00452-453.

{¶ 85} The trial court found in practice that NCB's actions were either ratified by phone or by other subsequent means:

> The bank made recommendations to Bill and he would approve of them through some fashion, usually over the phone.  See e.g. exhibit 62 pp 552 and 553.  There was only limited evidence that Mr. Lisle would give instructions to the bank in advance, such as liquidating some of his position in Chubb.  Therefore, all of the bank's actions were either ratified by phone

or other subsequent means. See Siebel Reports exhibits 301 and 302. Mr. Lisle never really rejected any recommendations made. Testimony of D. Watkins p 90.

{¶ 86} The court held that even were it otherwise, there is no recoverable claim because appellants did not suffer damages caused by the failure to comply with the Trust requirements for written instructions or approvals:

> Even assuming that the evidence was insufficient to support this conclusion, there are no damages about which plaintiff may complain. See R.C. 5810.09. A trustee is not liable to a beneficiary for breach of the trust if the beneficiary consented to the conduct or ratified the transaction constituting the breach.

{¶ 87} The record reflects that Mr. Lisle received account statements disclosing account activity, including a listing of all security purchases and sales. Appellants presented no evidence at trial of any trades that they claim Mr. Lisle did not in fact approve or ratify. Appellants have not argued that they suffered any damages proximately caused by any failure of NCB to secure prior written approval of security transactions made by NCB for the trust.

{¶ 88} We find that competent credible evidence in the record supports the trial court's determination that Mr. Lisle approved or ratified purchases made by NCB for the Trust portfolio account and that evidence is lacking in the record demonstrating that

31.

appellants suffered any damages proximately caused by the failure of NCB to secure prior written instructions or subsequent written approval from Mr. Lisle of security transactions.

{¶ 89} Based upon these two alternative grounds, we find assignment of error No. 9 not-well-taken .

### Failure to Evaluate Bill Lisle's Competency

{¶ 90} Under assignment of error No. 7, appellants argue (1) that the trial court erred in failing to hold that NCB's failure to monitor the capacity of Bill Lisle to prudently manage the trust after 1997 and (2) its failure to inform the remainder beneficiaries of the trust or their interests in it until 2005, constituted reckless indifference to the interests of the beneficiaries.

{¶ 91} In the September 24, 2012 judgment, the trial court found that the evidence at trial did not suggest that NCB knew or should have known that Mr. Lisle was incompetent. Mr. Lisle was never declared incompetent. Mr. Lisle was in a serious automobile accident in 1997. The trial court found that afterwards "Mr. Lisle executed a will and several codicils. He also bought real estate in Ohio. While his son did pay his bills and look after him, the bank did not know this." Appellants offered no medical evidence concerning Mr. Lisle's mental condition at trial to support their claim of incompetency.

32.

**{¶ 92}** The court made a specific finding as to Mr. Lisle's competency in its judgment. "I find, from the evidence, that he was competent to act as a member of the advisory committee until he resigned on August 31, 2006."

**{¶ 93}** We find competent, credible evidence exists in the record supporting the trial court's findings of these facts and that appellants failed to prove that NCB acted in bad faith, in willful default, or in reckless indifference by failing to evaluate Bill Lisle's competency.

### Failure to Advise Remainder Beneficiaries of Existence of Trust, of Their Rights under the Trust, and that Mr. Lisle was Managing the Trust

**{¶ 94}** Appellants also contend under assignment of error No. 7 that NCB acted with reckless indifference to interests of trust beneficiaries by failing to inform remainder beneficiaries of the existence of the trust or of their interests in the trust until 2005. The remainder beneficiaries are Mr. Lisle's children: Marcia Lisle, Philip Lisle, Janet Kates, and Lorance Dix Lisle.

**{¶ 95}** Appellants do not claim on appeal that NCB was under an obligation to communicate with the remaindermen. The trial court held in its judgment that under R.C. 5808.13(A), the trustee was required to provide reports of transactions only to current beneficiaries and that none of Mr. Lisle's children were current beneficiaries of the trust under R.C. 5801.01(F). R.C. 5801.01(F) defines the term current beneficiary: "'Current beneficiary' means a beneficiary that, on the date the beneficiary's qualification is determined, is a distributee or permissible distributee of the trust income or principal."

33.

{¶ 96} With respect to the trust, the court held:

> The trust itself requires at paragraph 4.1(o) that the defendant only need report to Bill as advisory committee member and adult beneficiaries, again Mr. Bill Lisle.

{¶ 97} Under assignment of error No. 7, appellants now argue that under R.C. 5808.13(E) NCB, as trustee, was permitted to "provide information and reports to beneficiaries to whom the provided information and reports are not required to be provided under this section." Appellants argue it was reckless indifference to the interests of the beneficiaries not to inform remainder beneficiaries of the existence of the trust or of their interests in the trust until 2005 as permitted under R.C. 5808.13(E).

{¶ 98} The record reflects that although NCB was under no obligation to communicate with the remaindermen, each of Mr. Lisle's children in fact met with NCB's representative, Don Watkins, or his predecessor, in person, over the years and discussed the trust. Philip Lisle and Marcia Lisle attended at least three meetings with Don Watkins from 1996 to 2006, Janet Kates and her husband met with an NCB representative at least twice – once in 2000 and once in 2004. Don Watkins met with Mr. Lisle's son, Lorance Dix Lisle in Alexandria, Virginia in 2005.

{¶ 99} At those meetings, NCB provided written portfolio reviews. Marcia Lisle testified at trial that she did, in fact, know that she was a beneficiary of the Markey Trust.

{¶ 100} We find appellants' claims of reckless indifference to remaindermen interests under assignment of error No. 7 to be without merit. Competent, credible

34.

evidence in the record supports the trial court's determination that NCB did not act with reckless indifference and breach its fiduciary duties as trustee by failing to inform remainder beneficiaries of the existence of the trust or of their interests in the trust.

{¶ 101} We find assignment of error No. 7 not well-taken in both respects asserted.

### Failure to Liquidate Trust Portfolio in 1999

{¶ 102} Under assignment of error No. 10, appellants contend that the trial court erred "when it failed to hold that the investment objectives chosen by NCB after 1999 were recklessly indifferent to the purpose of the trust and to the interests of the beneficiaries of the trust." Under this assignment of error, appellants claim that NCB breached its fiduciary duty when it failed in 1999 to liquidate the entire trust portfolio and convert the proceeds to bonds.

{¶ 103} The trial court summarized appellants' argument at trial on this issue:

Plaintiffs' expert, Mr. Stewart, testified that in 1998, the stock market was overheated and competent advisors knew this. Plaintiffs further claim that defendant knew, or should have known, that Mr. Bill Lisle, as the sole member of the advisory committee, was incapable of performing his duties, and that the advisory committee was improperly constituted. Plaintiffs claim that defendants only prudent course of action was to

liquidate the equity position of the portfolio and convert the proceeds to bonds, a safe harbor to conserve the estate, while they awaited proper advisory committee replacements and instructions.

{¶ 104} As discussed in our consideration of assignment of error No. 7, appellants offered no medical evidence at trial supporting claims that Mr. Lisle was not competent. The trial court found that Mr. Lisle was competent.

{¶ 105} The court also found that Mr. Lisle was the sole and only authorized advisory committee member in 1999 and continued to discuss investment decisions with NCB. The court also found that the trust investment transactions remained consistent with a twenty-five year strategy favored by Mr. Lisle – of investing in blue chips in a belief on the long haul such a strategy would be okay.

{¶ 106} The record includes communications from Mr. Lisle to Donald Watkins, NCB portfolio manager demonstrating Mr. Lisle's preference to invest in blue-chip equities:

> September 10, 1997:
>
> Many investors feel the market is dangerously high but I do not share that concern. From what I read and study the fundamentals still indicate that the bull market has not yet run its course. Even [if] it has, if we stick to the blue chips and continue to ride the market up and down as

36.

we have over the past fifty years my heirs will come out okay.  Bar[r]ing an emergency I do not expect to ever use the income from it myself.  (Ex. 62, NCB00529).

March 24, 1999:

Your investment philosophy of buying sound companies and never selling them unless you note some significant problems in either management or product line continues to be much better in my opinion than that of investment councilors [sic] who manage other porfolios that I follow.  (Ex. 62, NCB00538).

March 14, 2000:

I can well understand why you may be a bit cautious to do much buying in this market.  It does seem extremely high.  I keep pushing you to stay fully invested * * *.  (Ex. 62, NCB00542).

October 6, 2001:

As a result of the disaster in New York the market as a whole has taken a beating and the subject portfolio with it.

I am not really concerned because I feel you have selected very sound companies whose stock values wil[l] come back with the general market.

* * *

You might want to take advantage of the market decline to pick up some bargains. (Ex. 62, NCB00556)

{¶ 107} In its judgment, the trial court ruled that liquidation of the portfolio and conversion to bonds would be "in direct contravention of the direction that Mr. Bill Lisle was and had been giving" and a breach of its duties as trustee.

{¶ 108} On appeal appellants argue that the testimony of Tucker Cheadle and of expert Jack Stewart at trial demonstrated that a prudent investor would have liquidated the portfolio and converted the proceeds to treasury bonds. Appellants contend that market conditions were such that it was a reckless indifference to the interest of trust beneficiaries not to liquidate the Trust portfolio in 1999.

{¶ 109} As we have discussed, competent credible evidence supported the trial court's determination that Mr. Lisle remained competent to act as a member of the Advisory Committee until he resigned. Our review of the record also demonstrates that competent credible evidence in the record supports the trial court's determination that liquidating the trust portfolio and converting it to bonds in 1999 would have been "in direct contravention of the direction that Mr. Bill Lisle was and had been giving" NCB as trustee. Appellants acknowledged in their argument under assignment of error No. 9 that all trades conducted in the Trust Portfolio account required approval by Mr. Lisle as the sole member of the Advisory Committee.

{¶ 110} We find assignment of error No. 10 not well-taken.

38.

{¶ 111} Under assignment of error No. 5, appellants argue that the trial court erred in ruling that appellee had no legal duty to pay California income taxes on undistributed trust income on an annual basis for the years 1970 through 2006. Appellants contend that income taxes were owed annually on undistributed trust income pursuant CAL REV & TAX 17742(a) and that the NCB's failure to file tax returns and to pay taxes in California constituted a breach of NCB's fiduciary duties as trustee.

{¶ 112} Section 17742(a) provides:

(a) Except as otherwise provided in this chapter, the income of an estate or trust is taxable to the estate or trust. The tax applies * * * to the entire taxable income of a trust, if the fiduciary or beneficiary (*other than a beneficiary whose interest in such trust is contingent)* is a resident, regardless of the residence of the settlor. (Emphasis added.)

{¶ 113} As explained by the trial court in its judgment, whether California income taxes were due on accumulated trust income depends on whether Mr. Lisle's interest in the trust is deemed contingent or non-contingent:

The state of California imposes a trust income tax on the entire taxable income of a trust, if a fiduciary or beneficiary, other than a beneficiary whose interest is contingent, is a resident of California. California Section 17742(A). At all times relevant, Mr. Bill Lisle was a

39.

California resident and the fiduciary was not. Hence defendant had a duty to file and pay the California tax if Mr. Bill Lisle's interest was non-contingent.

{¶ 114} NCB argued at trial that distributions to Mr. Lisle under the Trust were contingent because they were subject to a condition precedent that the Trustee exercises its discretion under ¶ 2.3(a)(1) of the Trust to make a distribution. Paragraph 2.3(a)(1) of the trust agreement provides for distributions of income and, if necessary, principal of the Trust to Bill Lisle.

{¶ 115} The terms "child" or "living child" in the Markey Trust Agreement refers to Mr. Lisle, John R. Markey and Catherine Markey Anderson. The three were Ruth Markey's (Grantor's) surviving children. As we have discussed, the trust provided for the division of the trust into three sub-trusts, one for each child, upon John C. Markey's death in 1970 with each sub-trust created for one of the three living children.

{¶ 116} Accordingly, ¶ 2.3(a)(1) provides for distributions from the sub-trusts. The parties agree that under the terms of ¶ 2.3(a)(1), distributions to Mr. Lisle were to be made from his sub-trust as the Trustee deemed necessary for Mr. Lisle's "comfort, care, enjoyment, and support, and to meet emergencies:"

{¶ 117} Paragraph 2.3(a)(1) of the trust provides:

> (a) The income and principal of each part created for a living child of Grantor shall be held, administered and distributed as a separate trust as follows:

40.

(1) *During the life of each child, the Trustee shall pay to or for the use of such child* in quarterly or other convenient installments, *so much of the net income (or of the principal if necessary) of the trust being held for the benefit of such child as the Trustee in its sole discretion deems necessary or desirable for such child's comfort, care, enjoyment and support, or to meet emergencies.* In the exercise of the discretion granted to the Trustee hereunder, consideration may be given by it to any other sources of funds or support available to such child, and the decision of the Trustee with respect to the exercise of such discretion shall be final and conclusive. Any net income remaining undistributed at the end of any calendar year shall be added to and become part of the principal of the trust property. (Emphasis added.)

{¶ 118} Appellants argue that paragraphs 4.1(h) and (j), 6.1, and 6.2 of the trust agreement are also pertinent and preclude an argument that distributions to Bill Lisle were contingent.

{¶ 119} Donald E. Sammons, a California attorney with the tax law firm of Schmidt and Associates testified as an expert witness on tax matters for appellants. Mr. Sammons testified that the effect of Sections 4.1(h) and (j),6.1 and 6.2 of the Trust, under California law, was to render Mr. Lisle a non-contingent beneficiary of the Markey Trust, making accumulated income of the Trust subject to California income tax under Cal.Rev. & Tax Code Section 17742(a).

41.

**{¶ 120}** Appellants contend that under authority granted in ¶ 4.1(h) and (j), 6.1, and 6.2 of the Trust, distributions were not contingent because Bill Lisle had the power to direct the trustee to distribute any portion of the income or principal of the trust to himself at any time, and if the trustee balked, Bill Lisle held the power to terminate the trustee and appoint himself trustee to secure the distribution.

**{¶ 121}** The 1970 cross-delegation agreement delegated to Mr. Lisle "all of the rights, powers and discretions conferred upon the members of the [Advisory] Committee" with respect to the Lisle sub-trust. Accordingly, afterwards a grant of authority to the Advisory Committee constituted a grant of authority to Mr. Lisle.

**{¶ 122}** Paragraphs 4.1(h) and (j) of the Trust provide:

4.1 The Trustee shall have powers and duties hereinafter set forth which, to the extent hereinafter expressly so provided, shall be exercised in accordance with the directions of the Advisory Committee:

* * *

(h) Except as herein otherwise provided, the Trustee may allocate all or any part of the receipts, actual or constructive, including but not limited to rents, capital gain, interest or dividends in cash, stock or property, to income or to principal or to both, and may charge all or any part of the current or other expenses, disbursements, losses, premiums and discounts, to income or to principal or to both, as the Advisory Committee may direct, all without regard to any rule or practice of law or equity with

42.

respect to trusts; and the decision of such Committee shall be binding and conclusive on all beneficiaries of those trusts and any other person or persons.

* * *

(j) Except as herein otherwise provided, whenever it shall become necessary to divide the principal of the trust property into parts or shares or to distribute the same, the Trustee is authorized to make such payment or such division or distribution in kind or in money, or partly in kind and partly in money, as may be directed by the Advisory Committee, and for the purpose of each allotment the judgment of the Advisory Committee concerning the property thereof, and the relative value for the purpose of division or distribution of the property and security so allotted shall be binding and conclusive on all persons interested therein.

{¶ 123} Paragraph 6.1 of the trust expressly provides that a majority of the members of the advisory committee can remove a trustee. Paragraph 6.2 empowers a majority of the members of the advisory committee with authority to appoint a successor trustee upon removal of the trustee.

{¶ 124} CAL REV & TAX 17742(a) addresses California income tax liability of California residents who are beneficiaries of trusts. The statute provides that no tax liability is imposed on a "trust beneficiary whose interest * * * is contingent."

43.

{¶ 125} Kevin G. Robertson, a tax attorney at the Cleveland office of Baker & Hostetler LLP, testified as an expert witness on behalf of NCB at trial. Mr. Robertson testified that in California, at least since 1982, regulations have been in existence providing guidance as to the meaning of the term "contingent" as used in the tax statute. Section 17742(b) of Title 18 of the California Code of Regulations provides: "[a] contingent beneficiary is one whose interest is not subject to a condition precedent."

{¶ 126} Mr. Robertson also testified as to his search for California authority on the issue. He cited trial exhibit 309 as persuasive authority. The exhibit is an "information letter" dated March 5, 2001, from tax counsel of the Franchise Tax Board of the State of California on matter 20-0762. The letter includes a statement concerning what constitutes a non-contingent beneficiary:

A non-contingent beneficiary is one whose interest is not subject to a condition precedent, and a condition precedent is merely a condition that must be satisfied before the beneficiary will have a right to receive property from the trust. For example, if A will receive the corpus of a trust if, and only if, A survives B, the A's survival is a condition precedent to A's interest in the trust corpus. (Footnote omitted.) Trial Exhibit 309 at page 3.

{¶ 127} Mr. Robertson testified to additional guidance provided by a Technical Advice Memorandum, marked deposition Exhibit 57 and used at trial. The document is Technical Advice Memorandum No. 2006-0002 by tax counsel of the Franchise Tax Board of the State of California. According to Attorney Robertson, the memorandum

44.

provides nonbinding guidance on whether the exercise of absolute discretion by the trustee to make a distribution is considered a condition precedent for purposes of tax liability under Cal.Rev. & Tax Code Section 17742(a). The memorandum states:

> 1. A resident beneficiary whose interest in a trust is subject to the sole and absolute discretion of the trustee holds a contingent interest in the trust. The exercise of the trustee's discretionary power is a condition precedent that must occur before the beneficiary obtains a vested interest in the trust. Once the trustee decides to distribute income in a specified amount, the beneficiary has a non-contingent, vested interest in the trust, but only for that amount. (Footnotes omitted.)

{¶ 128} Trial Exhibit 310, is a Letter Decision of the State Board of Equalization, Appeals of King Family Trust and Tunney Junior Trust dated October 4, 2007. It also was cited as persuasive authority.

{¶ 129} The decision addressed the issue of whether a California beneficiary had a contingent or non-contingent interest in distributions from the trust. The beneficiary could not participate in the trustee's decision to distribute income but the beneficiary had the ability to fire the trustee and the beneficiary's approval was required to appoint a replacement. The trust beneficiary won the case.

45.

{¶ 130} Mr. Robertson argued that the case is persuasive authority for the proposition that the required exercise of discretion by an independent trustee before distribution constitutes a condition precedent despite authority of the beneficiary to terminate the trustee and shared authority to select a replacement.

{¶ 131} NCB argues that the trial court properly applied California law to conclude that Bill Lisle's interest in distributions under the Trust was contingent under CAL REV & TAX 17742(a). NCB contends distributions to Mr. Lisle were subject to the condition precedent of the trustee exercising discretion to make a distribution under Section 2.3(a)(1) of the Trust. Under NCB's argument, CAL REV & TAX 17742(a) does not impose income tax liability on beneficiaries whose interest in a trust is contingent, and therefore no California Income Tax was owed for undistributed income of the Trust from 1970 through 2006.

{¶ 132} Additionally, Attorney Robertson testified that even had Mr. Lisle terminated NCB as trustee and appointed himself as trustee, his interest would still have been subject to a condition precedent. Under such circumstances R.C. 1340.22(B), now re-codified as R.C. 5808.14(B)(1) imposes an ascertainable standard "related to the health, education, support, and maintenance of the beneficiary" as a condition to be met before any distribution could be made.

{¶ 133} In our view the trial court did not err in ruling that Mr. Lisle's interest in the Trust was contingent and did not create any California income tax liability under CAL REV & TAX 17742(a). Mr. Lisle's interest in the trust was subject to a condition

46.

precedent under either under the Trust's own terms or by imposition of an ascertainable standard by operation of R.C. 1340.22(B), now re-codified as R.C. 5808.14(B)(1), should Mr. Lisle use his authority to remove the trustee and appoint himself trustee to secure a desired distribution.

{¶ 134} Furthermore, given the existence of a good faith legal dispute on the issue with reasonable legal analysis supporting arguments on both sides of the California tax dispute, we conclude that, even were the resolution of the tax dispute otherwise, the trustee's failure to file tax returns and to pay California income taxes cannot be held to have been undertaken in bad faith, in willful default, or reckless indifference.

{¶ 135} We find assignment of error No. 5 not well-taken.

**Overcharging Trustee Fees**

{¶ 136} Appellants have claimed that NCB overcharged the trust for fees during its administration of the trust. Under assignment of error No. 6, appellants contend that the trial court erred in failing to hold that NCB's overcharging of fees did not constitute bad faith, willful default, or reckless indifference.

{¶ 137} The claim relates to fees charged, starting in 1991, on family owned assets held by the trust. Under assignment of error No. 6, appellants argue that no fees were to be charged on family held assets and that the charging of fees on those assets constituted a deliberate violation of the terms of the Trust. Appellants further argue that NCB as trustee lacked authority to unilaterally increase fees.

47.

{¶ 138} NCB responds that it informed Mr. Lisle in writing of its fee structure on March 26, 1973 and confirmed the new fee structure by letter dated August 28, 1974. Further, the fee charges appeared in quarterly account statements. While appellants have contended it was unreasonable to charge any fees on family-held companies, Amy Williams of NCB testified that NCB was "still responsible for those assets. We were required to obtain the income and * * * collect the income, and deposit the income * * * as well as prepare taxes on those assets."

{¶ 139} The trial court addressed the conflicting contentions of the parties over trustee fees on closely held assets in its judgment:

There was testimony that no fees were to be charged on these assets, as the bank was only collecting dividends and not actively managing the assets. The bank countered with testimony and exhibits that they were permitted to do so. It is also clear that the fee schedule did change during the bank's administration. See testimony of T. Cheadle. Such changes were communicated to Mr. Bill Lisle. While he questioned them sometimes (see exhibit 62), he also did ratify the fee structure.

{¶ 140} Paragraph 4.1(r) of the trust provides that "[t]he Trustee may pay itself reasonable compensation for its service hereunder as Trustee, commensurate with the services rendered and the responsibilities assumed by it." The trial court ruled that ¶ 4.1(r) "authorizes reasonable compensation for defendant's duties as trustee."

48.

{¶ 141} The trial court also found: "There is no evidence in the record that the fees assessed were unreasonable, only that they were improperly calculated or done without advisory committee approval." The trial court concluded that appellants failed to prove that NCB acted in bad faith, willful default, or reckless indifference with respect to claimed overcharging of trustee fees:

> Plaintiffs have failed to prove by clear and convincing evidence that any of the following was an act of bad faith, willful default, or reckless indifference to the purposes of the Trust:
>
> * * *
>
> B. Overcharging Trustee Fees

{¶ 142} Appellants have not argued that the trust agreement itself precludes the charging of trustee fees on closely held assets. Nor have appellants disputed the trial court's determination that ¶ 4.1(r) of the Trust "authorizes reasonable compensation for defendant's duties as trustee."

{¶ 143} We find competent, credible evidence in the record supports the trial court's finding that there was no evidence in the record that the fees assessed were unreasonable. Accordingly, we conclude that appellants' contention under assignment of error No. 6 that the fees charged demonstrate bad faith, willful default, or reckless indifference, are without merit.

{¶ 144} We find assignment of error No. 6 not well-taken.

49.

**Cumulative Effect of Series of Acts**

{¶ 145} In the second aspect of assignment of error No. 2, appellants argue that the trial court erred in failing to hold cumulative conduct in administration of the trust as establishing willful default or reckless indifference. In assignment of error No. 3, appellants contend that the trial court erred in failing to hold that accumulated failures in the administration of the trust demonstrated willful default or reckless indifference. We treat these assignments of error together.

{¶ 146} We consider these assignments of error to present a contention that the trial court erred in failing to treat various acts by NCB as trustee over the years (none of which demonstrate bad faith, willful default, or reckless indifference when considered individually) as establishing willful default or reckless indifference when considered together.

{¶ 147} In *Griffith v. Buckeye Union Ins. Co.,* 10th Dist. Franklin No. 86AP-1063, 1987 WL 17805, * 4 (Sept. 29, 1987), the Tenth District Court of Appeals considered such an argument in an insurance bad faith claim. The court rejected the argument and ruled that "Ohio courts have never held that the cumulative effect of a series of acts, even when they involve poor judgment or even negligence, translates into a claim of bad faith." *Id.* at *6.

{¶ 148} Conduct of a trustee committed in bad faith, willful default, or in reckless indifference all involve a breach of different and distinct degrees of care and are substantially more culpable than mere negligent or erroneous conduct. *See Anderson,*

50.

134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266 at ¶ 31-34.  Neither the trust itself nor R.C. 5810.08 mandate that NCB be held liable for breach of trust for less culpable conduct such as poor judgment or negligence as would be permitted under the cumulative evidence argument advanced by appellants.  We find *Griffith* persuasive on this issue and adopt the *Griffith* analysis with respect to claims based upon bad faith, willful default, and reckless indifference to the purposes of the trust or the interests of the beneficiaries.

{¶ 149} We find the second aspect of assignment of error No. 2 and assignment of error No. 3, not well-taken.

{¶ 150} Justice having been afforded the parties complaining, we affirm the judgment of the Probate Division of the Williams County Court of Common Pleas.  We order appellants to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.      _____
JUDGE

Stephen A. Yarbrough, P.J.

           _____
James D. Jensen, J.       JUDGE
CONCUR.

           _____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.